Gerald F. CORLEY et al., Appellants,

v.

BP OIL CORPORATION, Appellee.

No. 13098.

District of Columbia Court of Appeals.

Argued Nov. 16, 1978.

Decided June 12, 1979.

---

George H. Eggers, Silver Springs, for appellants.

Edward DeV. Bunn, for appellee. Francis D. Barrett, Washington, D.C., also entered an appearance for appellee.

Before KERN, GALLAGHER and FERREN, Associate Judges.

GALLAGHER, Associate Judge:

At trial, appellants sought to recover for fire damage to their home, in excess of insurance reimbursement, from BP Oil Corporation whose allegedly negligent servicing of an oil burner caused the blaze. After striking appellants' expert testimony regarding fire causation, the trial judge granted a directed verdict for appellee, removing the negligence issue from jury consideration. On appeal, appellants assert (1) erroneous exclusion of the expert testimony on causation, (2) improper granting of a directed verdict for appellee, and (3) the applicability of the doctrine of res ipsa loquitur. We reverse and remand for a new trial because even without the expert testimony, which was erroneously excluded, there was sufficient evidence of causation to submit the case to the jury.[1]

I.

The fire which precipitated this suit occurred in October 1974, substantially destroying the appellants' residence in south-

---

1. The applicability of res ipsa loquitur, a rule infrequently applied in cases involving fires, need not be determined since we find the expert opinion testimony admissible on the issue of causation.

east Washington. The appellants received $18,000 reimbursement from their carrier, Fireman's Insurance Company, leaving a $5,000 loss exceeding the insurance policy coverage.[2] About thirty days before the fire, a BP Oil serviceman called at the Corley home after Mr. Corley complained by telephone that the furnace was not working. At that time, and for several preceding years, the Corleys were covered by the BP Home Heat Service Plan, entitling them to emergency service, annual inspection and tune-up, and parts replacement. As Mr. Corley testified at trial, the oil burner service mechanic started up the furnace by pushing a relay button. According to Mr. Corley, the mechanic then remarked on the dirtiness of the furnace, placed two "soot sticks" in the furnace, and commented "that [sh]ould take care of it until they ha[ve] time to come out and clean it." The serviceman asked to use the phone, telling Mr. Corley that he intended to call BP Oil and report that the furnace needed cleaning. Although Mr. Corley heard the serviceman call in the report, no one from BP Oil ever came to clean the furnace.

On direct examination by appellant, the service mechanic did not recall the visit or conversation. His recollection of the work performed was based on a company work record of a relay adjustment. He testified that he customarily checked the fire and furnace drafts on home visits, and would clean the furnace if necessary. The witness further testified that he would not have left a broken furnace without fixing it or making arrangements for someone else to perform repairs or a thorough cleaning. He also testified generally that a blocked up flue (i. e., insufficient draft) would result in a dirty fire and smoke, although a normal oil furnace is clean burning. If a furnace is blocked with soot, he testified, fumes and smoke would escape by other routes.

A neighbor of the Corleys testified that, a few days prior to the fire, she saw grayish, smokey-looking smoke coming out of the Corley's chimney. She had never seen smoke coming from the chimney before. Albert Hicks, a fire investigator for the District of Columbia Fire Department, concluded on the basis of an inspection immediately after the fire that its point of origin was in the furnace area, possibly around the burner. He had observed heavy charring of the floor joists in front of the furnace and above the furnace door. As to causation of the fire, Mr. Hicks testified that some defect in the furnace was responsible, although he could not say exactly what.

Appellants' expert witness, a mechanical engineer in the field of heating design, was called out of the jury's presence so the trial judge could determine the scope of his testimony. Appellants had supplied the expert's name and the substance of his testimony a week before trial by means of a supplemental answer to appellee's interrogatory number 3:[3]

> H. L. Arey, Box 717, Glen Echo, Maryland, Consulting Engineer. Subject Matter: cause of fire. The substance of the facts and opinions to which he is expected to testify is that the improper use of "soot sticks" on an oil burner to clean it caused a blow or burn out letting the fire escape into the boiler room.

Due to the late date of supplementation, the judge had ruled prior to trial that the expert testimony would be limited to the theory expressed in the supplemental answer. However, at trial the judge permitted Mr. Arey out of the presence of the jury to explain his theory, confusion being caused by inartful drafting of the answer. Mr. Arey testified that an improper cleaning of the soot from the flue gas passages caused the fire. He explained that the

---

2. Fireman's Insurance Company, the corporate appellant in this case, demands judgment of $18,000 from appellee, if found liable, through a right of subrogation.

3. Interrogatory Number 3 requested that appellants "state the names and addresses of all expert witnesses who you will call to testify at trial and state the subject matter upon which each will testify; and state in detail the facts and opinions of which each such expert will testify and the grounds for such opinion testimony."

improper use of the soot sticks referred to in the answer did not mean the sticks had caused the fire. Rather it was the improper reliance on the soot sticks, when a thorough cleaning was required, that caused the fire. In his words, the use of the soot sticks was like "sending a boy on a man's job."

After Mr. Arey clarified his theory, the judge imposed the following guidelines:

> Your testimony here will be limited to the theory that is set forth in the answer to the interrogatory, that is the substance and the facts and the opinions to which he is expected to testify is that the improper use of the soot sticks on an oil burner to clean it causing a blow or burn out letting the fire escape into the boiler room.
>
> Now, if you want to explain it in the manner in which you explained it when you were here before as to what you meant by the improper use or if you want to elaborate a little more, that is proper. But, to go off to a different theory is improper, sir.

At this point, the judge allowed the jury to return to the courtroom. In response to a hypothetical based on the facts in the case, Mr. Arey offered his opinion as to causation:

> The fire came from the fire box because the gas passage was too small or closed and the gas passage was too small or closed because of insufficient combustion air over a period of time for proper non-soot producing combustion which further reduced the gas passage. This gas passage was partially closed at least at the time of the service call and the use of the soot sticks to remove the carbon rather than a complete cleaning was an improper use of the soot sticks.

After the opinion was offered, appellee moved to strike the testimony. The judge sustained the objection because, in his view, the testimony that the gas passage was

clogged or too small for combustion deviated from the theory expressed in the supplemental answer. After the close of appellants' evidence, the judge granted appellee's motion for a directed verdict, because if the case went forward "the jury would have to speculate as to what actually did cause the fire."

## II.

Under Super.Ct.Civ.R. 26(e)(1)(B), a party has a continuing duty to seasonably supplement his response to discovery requests relating to expert witnesses to be called at trial.[4] The duty of supplementation may be enforced through sanctions imposed by the trial court, including exclusion of evidence, continuances, or other action deemed appropriate by the court. *See* Fed.R.Civ.P. 26(e), Advisory Committee Note.

Discovery sanctions are particularly committed to the trial court's discretion. *See, e. g., Pollock v. Brown,* D.C.App., 395 A.2d 50, 52 (1978); *S. Kann's Sons Corp. v. Hayes,* D.C.App., 320 A.2d 593, 596 (1974); Wright & Miller, Federal Practice and Procedure: Civil § 2050 (1970). As this court has stated in *Hollins v. Sneed,* D.C.App., 300 A.2d 447, 449 n. 4 (1973):

> A court has inherent power to apply sanctions for a breach of [the duty to supplement responses], including the power to exclude evidence, but "[t]he court necessarily has wide discretion in these matters", and is not required to apply sanctions in every instance. 8 Wright & Miller, Federal Practice & Procedure § 2050, at 326 (1970).

*See also Freedmen's Hospital v. Heath,* D.C. App., 318 A.2d 593, 595 (1974) (where notification not given until eve of trial that expert witness would testify, trial judge had discretion to strike or refuse to strike testimony adduced, as not being in accordance with rule).

---

**4.** Rule 26(e)(1)(B) provides:

(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to

   *    *    *    *    *    *

(B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.

■ Given the wide latitude of a trial judge in overseeing discovery and the trial process, we cannot say that the limitation of expert testimony to the theory contained in the supplemental answer was an abuse of discretion. It was within the court's discretion to restrict the expert testimony in this fashion, rather than striking the supplemental answer as appellee requested. The partial limitation on testimony was tailored to effectuate the primary purpose of the liberalized discovery rules: prevention of unfair surprise at trial. In excluding testimony of an expert hired after the trial began, the court in *Tabatchnick v. G. D. Searle & Co.*, 67 F.R.D. 49 (D.N.J.1975), explained the rationale underlying seasonable supplementation:[5]

> The purpose of discovery is to explore everything available and narrow down the fact issues in controversy so that the trial process may be efficient and economical. The calling of a new expert, not hired until after the jury was drawn, would have the opposite effect. It would create new fact issues and mushroom or balloon the trial. At the same time it would unfairly destroy the means for informative cross-examination on the basis of pretrial preparation. [*Id.* at 54.]

*See also Davis v. Marathon Oil Co.*, 528 F.2d 395, 403–04 (6th Cir. 1975). In contrast to the *Tabatchnick* case, appellee was able to depose the expert witness before trial, despite late supplementation.[6] Further, counsel had sufficient access, even on short notice, to BP Oil Corporation employees who might have been able to contradict appellants' expert testimony.

■ Although the trial judge had authority to confine the expert testimony to the theory expressed in the supplemental answer, it was an abuse of discretion to strike the testimony adduced. In discussing the boundaries of trial court discretion, this court has stated:

> [I]f the trial court's decision is supported by improper reasons, reasons that are not founded in the record, or reasons which contravene the policies meant to guide the trial court's discretion or the purposes for which the determination was committed to the trial court's discretion, reversal likely is called for. *Gaither v. United States*, [D.C.App., 391 A.2d 1364 (1978)]. [*Johnson v. United States*, D.C.App., 398 A.2d 354, 367 (1979).]

In our view, the court's conclusion that Mr. Arey introduced a new theory is not substantiated by the record. Mr. Arey's opinion did not deviate from an improper cleaning theory as he explained it out of the jury's presence.

Additionally, the trial court's discretion should have been exercised consistent with the policies underlying expert testimony and the discovery process. What this court has said regarding the effect of pretrial orders on the scope of expert testimony also applies in this context:

> Although we agree with the general requirement to restrict parties to the issues framed by the pretrial order, we do not believe a party must recite all testimony therein on those issues in order to avoid being precluded from offering such evidence at trial. [*Gerber v. Columbia Palace Corp.*, D.C.Mun.App., 183 A.2d 398, 399 (1962).]

While the purpose of pretrial orders, like the discovery process, is to minimize unfair surprise at trial, rigid adherence to the pretrial order is not always exacted. *See, e. g., Clarke v. District of Columbia*, D.C.App., 311 A.2d 508, 511 (1973); *Borger v. Conner*, D.C.App., 210 A.2d 546, 548 (1965); *All Weather Storm Windows v. Zahn*, D.C.Mun. App., 112 A.2d 496, 497 (1955). In this case, the witness should have been permitted some leeway to explain his answer, particularly where, as here, jury understanding of

---

**5.** In *Tabatchnick, supra* at 55, the court held that supplementation after the jury has been drawn cannot be considered seasonable, in the absence of unexpected developments.

**6.** In *Freedmen's Hospital, supra* at 595, we held that the trial court's refusal to strike testimony of appellant's expert medical witness was not an abuse of discretion, even though late notification deprived appellee of the opportunity for discovery of expert opinion.

technical engineering concepts might have been enhanced.

■ Although the trial court exercised its discretion erroneously, we need not determine whether the error alone was of a magnitude to require reversal. *See generally Johnson, supra* at 366. Even without the excluded testimony regarding fire causation, there was sufficient evidence for the case to go to the jury; thus, the directed verdict was improperly granted.

■ On review of a directed verdict, the evidence must be viewed most favorably to the party against whom the motion is made, and that party must be given the benefit of all reasonable inferences from the evidence. *See, e. g., St. Paul Fire & Marine Insurance Co. v. James G. Davis Construction Corp.,* D.C.App., 350 A.2d 751, 752 (1976); *Gaither v. District of Columbia,* D.C.App., 333 A.2d 57, 59 (1975). "With the evidence so viewed, a verdict may be directed only when the evidence is so clear that reasonable men could reach but one conclusion." *Bauman v. Sragow,* D.C.App., 308 A.2d 243, 244 (1973). If there is room for a difference of opinion, the wise course is for the trial judge to allow the case to go to the jury. *Seganish v. District of Columbia Safeway Stores,* 132 U.S.App.D.C. 117, 122, 406 F.2d 653, 658 (1968). Viewing the testimony adduced at trial most favorably to appellants, there was sufficient evidence to support an inference that negligent servicing by BP Oil permitted a dangerous accumulation of soot in the furnace and flue passages, causing the fire.

Motions for a directed verdict deprive plaintiff of a determination of the facts by a jury and should, therefore, be granted sparingly. *Farner v. Paccar, Inc.,* 562 F.2d 518, 522 (8th Cir. 1977). The court must take care to avoid weighing the evidence, passing on the credibility of witnesses or substituting its judgment for that of the jury. *Yazzie v. Sullivent,* 561 F.2d 183, 188 (10th Cir. 1977). "Where, as here, the case turns on controverted facts and the credibility of witnesses, the case is peculiarly one for the jury." *Aylor v. Intercounty Construction Corp.,* 127 U.S.App.D.C. 151, 155,

381 F.2d 930, 934 (1967). Accordingly, the case must be reversed and remanded for a new trial.

*So ordered.*