Jeremias JIMENEZ, Appellant,

v.

James W. HAWK, et al., Appellees.

No. 94–CV–1493.

District of Columbia Court of Appeals.

Argued May 6, 1996.

Decided Oct. 10, 1996.

---

David P. Sutton, with whom David L. Hilton was on the brief, Fairfax, VA, for appellant.

James C. McKay, Jr., Assistant Corporation Counsel, with whom Charles F.C. Ruff, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellee District of Columbia.

Kenneth J. Barton, Jr., Fairfax, VA, for appellees Jesse Witherspoon, Jr. and James Hawk.

Before SCHWELB and KING, Associate Judges, and KERN, Senior Judge.

KERN, Senior Judge.

This is an appeal from a judgment by the trial court directing a verdict in favor of

appellees after appellant had presented his evidence in support of his complaint. Appellant alleged that as a consequence of appellees' negligence, he had suffered a severe injury in August 1991, from burns he received on premises they variously owned and leased.[1] Upon review of this record we cannot conclude that there are "absolutely no facts or circumstances from which a jury could reasonably find negligence," *see District of Columbia v. Smith,* 642 A.2d 140, 141 (D.C.1994). Accordingly, we reverse and remand for a new trial.

The theory of appellant's case is captured in the Joint Pre-Trial Statement contained in the record before this court (R. 35–37) as follows:

*Plaintiff's Claims:*

1. Plaintiff claims the injuries sustained by plaintiff was [sic] proximately caused by the negligence of the defendants in that defendants knew, or should have known of the existence of a tank which was positioned below the first floor of the building at 1437 Irving Street, N.W., was connected to the first floor via the two open metal pipes, and prior to August 10, 1991, had been or was being used for storage of flammable material; which negligence includes defendants' failure to cause the pipes to be capped or sealed to prevent direct access from plaintiff's work area to the flammable material contained in the tank, defendants' permission and invitation to persons working in the area to use welding and cutting torches although the use of such torches constituted a danger in the particular area, and defendants' failure to warn plaintiff of the dangerous condition.

Appellees contended in their motion for a directed verdict, after appellant had presented his case to the jury, that he had failed to

show negligence on their part and, in any event, the injuries he had suffered were not proximately caused by any negligent actions on their part. The trial court granted their motion and stated: "Just so the record is clear, it is this court's belief that the jury . . . on proximate cause, . . . on everything would be forced without expert testimony to speculate as to the cause and effect of this maintenance of the tank. . . ." (Tr. 325)

■ In *Remeikis v. Boss & Phelps, Inc.,* 419 A.2d 986, 988 (D.C.1980) (citations omitted), this court stated with respect to a defense motion for a directed verdict:

> On a motion for directed verdict . . . the evidence must be construed most favorably to the plaintiff; to this end he is entitled to the full effect of every legitimate inference therefrom. If upon the evidence, so considered, reasonable men might differ, the case should go to the jury; if, on the other hand, no reasonable man could reach a verdict in favor of the plaintiff, the motion should be granted.

[Citations omitted.] *See Corley v. BP Oil Corp.,* 402 A.2d 1258, 1263 (D.C.1979).

This court in *Abebe v. Benitez,* 667 A.2d 834, 836 (D.C.1995) (citations omitted), stated that "In ruling on a motion for a directed verdict, the judge is not the trier of fact. As long as there is some evidence from which jurors could find that the party has met its burden, a trial judge must not grant a directed verdict." The court quoted with approval from *Pazmino v. WMATA,* 638 A.2d 677, 678 (D.C.1994), "In so viewing the evidence, the court must take care to avoid weighing the evidence, passing on the credibility of witnesses, or substituting its judgment for that of the jury." *Abebe, supra,* 667 A.2d at 836. We have also noted that because directed verdict motions deprive the plaintiff of a determination of the facts by a jury, they should be granted "sparingly." *Corley, supra,* 402 A.2d at 1263.

---

1. Appellee District of Columbia Land Redevelopment Agency (DCLRA) owned the property and had leased it to appellee Hawk for whom appellee Witherspoon acted as a rent collector. The various subtenants include Mr. Adames who invited appellant to do his welding on the property he had subleased and where he was burned.

We turn now to the record in the instant case. At trial, appellant presented the testimony of four witnesses. District of Columbia Fire Department Inspector Davis testified that his records showed "there were gasoline and motor oil tanks installed on the property [where the burning occurred]." [2] He further identified the Section in the D.C. Fire Prevention Code (the Fire Code) that covered "the use and discontinued use of such tanks." (Tr. 310–11)

The trial court took judicial notice of article 2804.63 of the Fire Code, which was in effect at the time of the accident. It provides in pertinent part:

> Any tank which has been abandoned for a period of one year shall be removed from the property in a manner approved by the fire official and the site restored in an approved manner. When the fire official determines that the removal of the tank is not necessary, he may permit the tank to be abandoned in place by the following method:
>
> a. Remove all flammable or combustible liquid from the tank and all connecting lines.
>
> b. Disconnect the suction, inlet, gauge, and vent lines.
>
> c. Fill the tank completely with an inert solid material. Cap remaining underground piping.
>
> d. Keep a record of tank size, location, date of abandonment, and method used for placing the abandoned tank in a safe condition.

Article 28, District of Columbia Fire Prevention Code, § F–2804.63 (BOCA Basic/National Fire Prevention Code/1984) 34 DCR 1072 and 2149 (1987). Inspector Davis testified that his records at the Fire Department did not show that "any application or other record was made with regard to the discontinued use of any of the tanks there." (Tr. 310)

Appellant presented appellee Hawk as a witness. He testified that he had leased the building in which the fire took place from the DCLRA in 1980 (the District had acquired the building in 1968 or 1969) (Tr. 251–52). Hawk explained that the building had originally been used by an automobile dealership. After he entered into the lease he arranged for the first floor of the building to be used for repairs on auto motors, transmissions and rear-ends, and the second floor was a body shop. (Tr. 252)

Hawk further testified (Tr. 253) that there was a tank beneath the first floor that was used in the 1950's for the "change [of] oil and stuff." There were two pipes that entered into the area Adames had subleased and where appellant incurred his burns. These pipes, he acknowledged, lead down into the oil tanks. (Tr. 253) In 1988, according to Hawk, the tank of oil had been pumped out and one pipe was "closed . . . with concrete" and the other pipe was covered with a bucket. (Tr. 253–54). Hawk admitted that the bucket was not secured on the pipe, and that he didn't "know what was down in the pipe."

Appellant presented as a witness, Mr. Witherspoon, who collected the rent each month from the tenants of appellant Hawk at 1357 Irving Street. (Tr. 232.) Witherspoon testified that Mr. Adames had rented an area on the first floor from Mr. Hawk. (Tr. 235.) An area where autos were being worked on was called a "bin," and in this particular bin there were two pipes in the floor. One pipe was at "ground level" and the other was "three-foot out of the ground." (Tr. 247.) Appellee Hawk had told Witherspoon that "the pipe from the top of the ground would run into an oil [tank], which was used for storage years ago." (Tr. 249.) The witness testified that the longer of the pipes "had a bucket over it" and the other pipe "was sealed *to some degree* with concrete." (Emphasis added.) (Tr. 237.) Witherspoon acknowledged that the bucket was occasionally off the pipe, apparently removed by others utilizing the ground level bins, *e.g.,* "[s]omebody would take it off." (Tr. 239.) Witherspoon added that if the bucket was taken off, there would be access to the tank below. (Tr. 240.) Witherspoon also testified that everybody working in the bins had been in-

**2.** The 1926 plat of the property in issue received in evidence showed one gasoline and one oil tank. (Tr. 314)

structed to use 100–gallon drums for depositing "used motor oil, leftover paint or anything of that nature." (Tr. 240.)

Appellant himself testified that the tenant Adames, who had sublet a bin, allowed him on the day of the accident to use this bin to cut steel bars with a torch. (Tr. 106.) The torch "emits a lot, a shower of sparks . . . [which are] little pieces of iron that are hot." Appellant, while performing this task on the day of his injury, saw sparks fall near the pipes. (Tr. 107.) Then, appellant saw flames come up to a level higher than his head from the particular pipe opening up close to the floor. As appellant ran around the bin after observing *this* flame, the other pipe "started to give off flames." (Tr. 108.) A person from a neighboring bin responded to appellant's cries for help (Tr. 112–13) and assisted appellant in extinguishing the flames which had seriously burned him. (Tr. 114.)

In our view of the record, the jury had before it an express provision of the D.C. Fire Prevention Code that "[a]ny tank which has been abandoned for . . . one year shall be removed from the property," or if the tank is *not* removed, a fire official "may permit the tank to be abandoned in place by a [prescribed] method. . . ." D.C. Fire Code § 2804.63 (emphasis added). The "method" prescribes (a) removing all flammable or combustible liquid from the tank and "all connecting lines," (b) disconnecting the suction, inlet, gauge, and vent lines, and (c) filling the tank completely "with an inert solid material" and capping "the remaining underground piping." *Id.* The Fire Code expressly provides that as a further condition of abandoning the tank in place, a record must be kept of the tank size, location and date of abandonment as well as of the "method used for placing the abandoned tank in a safe condition." *Id.*

■ In determining whether appellees' were in fact negligent, we note that evidence of code violations, especially those with the public safety as an objective, are evidence of negligence. *See Otis Elevator Co. v. Tuerr,* 616 A.2d 1254, 1259 (D.C.1992); *District of Columbia v. White,* 442 A.2d 159, 163–64 (D.C.1982) (citations omitted). Here, there was evidence that appellees violated the ap-

plicable D.C. Fire Code, which was designed for the public safety. Thus, the jury had evidence from which it could conclude that appellees' conduct was negligent.

In addition, appellant presented testimony at the trial that appellee DCLRA had neither removed the tank in question nor abandoned it in place by "placing the tank in safe condition." Consequently, the jury could find that appellee District of Columbia and appellee Hawk violated the standard of care required for the abandonment in place of a tank used for the storage of used motor oil and paint, thus establishing their negligence.

■ As to appellees' contention that appellant had failed to prove that appellees' negligence was the proximate cause of his injuries, we note that proximate cause is defined as "that cause which, in natural and continual sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred." *Wagshal v. District of Columbia,* 216 A.2d 172, 175 (D.C.1966) (citations omitted).

■ In *St. Paul Fire & Marine Ins. Co. v. James G. Davis Construction Corp.,* 350 A.2d 751, 752–53 (D.C.1976), we stated:

> On review of a directed verdict, we review the evidence with all favorable inferences it allows the appellants, *Gaither v. District of Columbia,* 333 A.2d 57, 59 (D.C. 1975); but our inquiry is also disciplined by the consideration that where plaintiff's evidence invites the jury to speculate as to negligence or causation a directed verdict is properly granted. *Pepsi Cola Co. v. Waddell,* 304 A.2d 630, 632 (D.C.1973).

*See also Corley, supra,* 402 A.2d at 1263 ("motions for a directed verdict deprive plaintiff of a determination of the facts by a jury and should, therefore, be granted sparingly") (citations omitted).

■ We have commented on the term "speculate" as used in the context of a jury being permitted to draw inferences from the evidence:

> "Speculate," as used in negligence cases, is a word of art with a definite and limited meaning. We say, in effect, that a jury should never be permitted to guess as to a

material element of the case such as damages, negligence, or causation. *See Mac-Maugh v. Baldwin,* 99 U.S.App. D.C. 247, 239 F.2d 67 (1956).

*Courtney v. Giant Food, Inc.,* 221 A.2d 92, 94 (D.C.1966) (citations omitted).

Our decision in *Corley* is instructive. There, appellants sought to recover for fire damage to their house allegedly caused by the negligent servicing of an oil burner by appellee. *Corley, supra,* 402 A.2d at 1259. The trial court directed a verdict against appellants at the close of their evidence, finding that to go forward would require the jury to speculate as to the cause of the fire. *Id.* at 1261. However, this court concluded that it was error for the trial court to direct a verdict against appellants based upon a review of the testimony presented at trial. *Id.* at 1263.

Thus, there was testimony at trial that appellant's furnace needed cleaning, that a blocked up flue would result in a dirty fire and smoke, that a witness had seen "grayish, smokey-looking smoke coming from [appellant's] chimney," and that, as testified to by a fire inspector, the fire originated "in the furnace area, possibly around the burner" and was caused by "some defect in the furnace . . . although he could not say exactly what." *Id.* at 1260. This court concluded that there was sufficient evidence to support an inference that appellee's negligent service permitted a dangerous accumulation of soot in appellant's furnace and flue, possibly causing the fire. *Id.* at 1263.

■ In our view, appellant here presented evidence to support a reasonable inference by the jury that appellees' negligence in failing either to remove or abandon in place the underground storage tank(s), as prescribed by the D.C. Fire Code, constituted negligence and the proximate cause of the fire, which in turn caused appellant's injury. *See id.* Specifically, appellant's welding produced a shower of sparks of hot metal bits and pieces; one of the two pipes opening into the bin in which he was then working was only covered with a *removable* bucket and

the other pipe was only sealed with concrete to *some* degree; the bucket on the first pipe had been removed on prior occasions; the tenants in the building had been directed not to use the pipes for disposal of used motor oil and paint but rather to use empty metal oil drums; and, that on the day in question, while appellant was welding and sparks were flying, flames burst out of each of the two pipes and rose to such a height as to burn appellant.

■ We turn now to the trial court's ruling that appellant's failure to present expert testimony was fatal to his case. In *District of Columbia v. White, supra,* 442 A.2d at 164, we stated:

Proof of a deviation from the proper standard of care does not require expert testimony where the events from which the negligence arose are "within the realm of common knowledge and everyday experience." *Matthews v. District of Columbia,* 387 A.2d 731, 734-35 (D.C.1978); *see Gaither v. District of Columbia,* 333 A.2d 57, 60 (D.C.1975). However, expert testimony is required when the subject presented is "so distinctly related to some science, profession, business or occupation as to be beyond the ken of the average layman." *Hughes v. District of Columbia,* 425 A.2d 1299, 1303 (D.C.1981).[3]

[Some citations omitted.]

■ The jury in the instant case surely could use its common sense and everyday experience to infer reasonably from the evidence that an abandoned tank neither removed from nor secured in the ground as required by the D.C. Fire Code, in which used motor oil had been stored over the years, constituted negligence; and that when pipes leading into the tanks were wholly or partially exposed to the work area where appellant was welding (*i.e.,* the so-called auto bin), the resultant sparks constituted a fire hazard for a person working there. The jury could further find, without the need of expert testimony, that on the day in question sparks entered the pipes because the pipes and tank

---

**3.** We have noted that "[t]he causes of action that *require* expert testimony are rare." *Columbus Properties, Inc. v. O'Connell,* 644 A.2d 444, 447 (D.C.1994) (internal quotations and citations omitted).

were not secured properly; and, as a consequence, the sparks struck oil which was in the tank either because it had not been *completely* drained in 1988, or *improperly dumped* down the open pipes subsequent to 1988.

In sum, when the evidence is viewed in the light most favorable to appellant, a reasonable jury might find appellees were negligent and their negligence caused appellant's injuries. Accordingly, the judgment entering a directed verdict must be reversed and the case remanded for trial on the merits.[4]

*So ordered.*

KING, Associate Judge, dissenting:

In my view, the trial judge was correct when she granted the motions of each defendant for a directed verdict at the close of the plaintiff's case. Because the majority concludes otherwise, I respectfully dissent.

Although the trial judge granted the directed verdict motions on several grounds, the principal basis for that ruling was the judge's conclusion that the plaintiff failed to establish proximate cause. While I believe there were significant deficiencies in the plaintiff's case on the issues of notice, duty, and breach as to some of the defendants, I will focus on the proximate cause issue, applicable to all defendants, as the trial judge did. The bottom line for the trial judge was the lack of expert testimony concerning the "cause and effect" of the fire vis-a-vis the maintenance of the tank. While I do not necessarily agree that plaintiff could establish proximate cause only with expert testimony, it is clear to me, as the trial judge ruled, that plaintiff did not make his case on that issue.

From this record the jury could find, construing the evidence in the light most favorable to the plaintiff, *see Corley v. BP Oil Corp.,* 402 A.2d 1258, 1263 (D.C.1979), that there was an underground tank in place on the premises, that it had been there at least since 1926, that it had been used previously to store either oil or gasoline, but, that it was no longer used for that purpose. Further, there was testimony that a fire occurred at or near each of the two outlets of the tank that injured the plaintiff.

There was also unrebutted testimony, however, that the tank had been pumped out. Moreover, there was no evidence of any failure to comply, or to substantially comply, with the provisions of the Fire Prevention Code, relating to abandoning a tank such as this one, other than testimony, by a Fire Department representative who had not examined the tank, that the Fire Department had no record of the tank being closed in accordance with the Fire Prevention Code.[1] So far as the record shows, the tank could have been filled to the top with some noninflammable or noncombustible material. Finally, there was no evidence concerning what caused the fire, whether or not the fire was due to some substance in the tank, or in one of the outlet pipes, or both, or that it did not originate from some other source. On this record, the jury could only speculate that some unproven violation of the Fire Prevention Code was the proximate cause of the fire.

We have cautioned repeatedly in recent years that it is not enough to show that some duty has been breached and that some person has been injured: "the mere happening of an accident does not impose liability or reveal proof of negligence." *Rajabi v. Potomac Electric Power Co.,* 650 A.2d 1319, 1322 (D.C.1994) (internal quotations and citations omitted). In order to recover for an injury, the plaintiff must show a causal connection between the breach and the injury. *See Twyman v. Johnson,* 655 A.2d 850, 852 (D.C. 1995). We have also said that under some circumstances this nexus may be shown only by expert testimony. *Washington Metro. Area Transit Auth. v. Davis,* 606 A.2d 165,

---

4. We do not agree with the argument by appellee Witherspoon that there was no evidence he had knowledge of the underground tank. He acted as an agent for appellant Hawk in collecting rent and admitted being told by Hawk of the storage of oil below the ground into which unsecured pipes ran.

1. The applicable provisions of the Fire Prevention Code are set out in the majority opinion. *Ante* at 460.

170 (D.C.1992). In other circumstances, however, we have emphasized that, although the causal connection may be shown by either expert testimony or other evidence, it nonetheless must be established in some fashion in order to permit recovery. *District of Columbia v. Billingsley*, 667 A.2d 837, 843 (D.C.1995).

Here, the trial judge ruled that the plaintiff must present expert testimony in order to establish proximate cause. It may be that the trial judge is correct on that point, but I would not rule out the possibility that plaintiff could have met its burden by presenting evidence other than by expert testimony. The trial judge is certainly correct, however, whether or not expert testimony is necessary, that there was a failure to establish proximate cause in this case. Therefore, the trial judge did not, in my view, err when she granted the motions for directed verdict.