Thomas L. BUSHONG, Appellant,

v.

Byung Kyu PARK, et al., Appellees.

No. 02–CV–633.

District of Columbia Court of Appeals.

Argued May 20, 2003.
Decided Dec. 4, 2003.

---

David F. Grimaldi, Washington, DC, for appellant.

David Rosenblum, with whom Allen M. Hutter was on the brief, for appellees Byung Kyu Park and Ok Hee Park.

William T. Kennard for appellee Hartford Insurance Company.

Before TERRY, SCHWELB, and REID, Associate Judges.

TERRY, Associate Judge:

Byung Kyu Park was paralyzed from the neck down after his car was hit from behind by a car driven by appellant Bushong. A jury found that appellant's negligent conduct was the proximate cause of Mr. Park's injuries and awarded Mr. Park $1.5 million in damages. Appellant filed a motion for new trial or, in the alternative, for judgment notwithstanding the verdict, but that motion was denied. Before this court appellant maintains that the trial court erred in denying his post-trial motion and in allowing an expert witness to testify, and that the court abused its discretion by limiting the cross-examination of two other witnesses. We find no reversible error, and hence we affirm the judgment in all respects.

## I

During the morning rush hour on August 12, 1997, Kyeong Yi, a non-party in this appeal, was driving southbound on 16th Street, N.W. As she came to a stop behind several cars near the intersection of 16th Street and Whittier Place, her car was rear-ended by Mr. Park's car. As soon as she realized that she had been hit, Ms. Yi looked in her rear view mirror and saw Mr. Park's face, noting that its expression was one of surprise. Ms. Yi then put her car in park, removed her seat belt, and started to get out of her car to assess what had happened. Before she was able to open her car door, however, she felt the impact of another collision. Ms. Yi again looked in her rear view mirror, but this time she was unable to see Mr. Park. According to Ms. Yi, the impact from the second collision was more severe because it caused her car to jolt forward and hit the van that was stopped about six feet ahead of her, which had not happened after the first collision. After the second

impact, Ms. Yi alighted from her car and found Mr. Park conscious, but slouched across the passenger seat of his car, apparently immobile.

Mr. Park testified that he accidentally struck the rear of Ms. Yi's car while running errands for his employer, Crystal Press. After colliding with Ms. Yi's car, Mr. Park put his car's gearshift in park and removed the shoulder portion of his seat belt. As he was unfastening the waist portion of the seat belt,[1] his car was hit by appellant's car. Mr. Park, like Ms. Yi, described this second collision as more violent than the first one. As a result of the second impact, he testified, he was unable to move and fell over onto the adjacent passenger seat.

Appellant testified that he too was driving to work that morning and came to a stop behind Mr. Park's car at the red light near 16th Street and Whittier Place. Then, appellant said, he saw Mr. Park's car collide with Ms. Yi's, bounce backward, and hit her car a second time.[2] After the second collision, according to appellant, Mr. Park's car drifted backward and nudged against his car. Appellant also stated that Mr. Park fell over after the first collision between Mr. Park's car and Ms. Yi's car, not after the second collision.

Amit Reizes testified for the plaintiff, Mr. Park, as an expert in accident reconstruction. Mr. Reizes concluded that, given the comparative weight of Mr. Park's and Ms. Yi's cars, it would have been impossible for Mr. Park's car to bounce back after colliding with hers because his car was much heavier. Mr. Reizes also

stated that he measured the incline of the road at the scene of the accident and found that it was 1.1 degrees downhill. He then placed a car of the same type as that driven by Mr. Park at the site and found that, when in neutral, the car remained stationary, thus casting doubt on appellant's testimony that Mr. Park's car drifted backwards after the second collision. Mr. Reizes also examined and photographed all the vehicles involved in the accident, and in the course of that examination he found that appellant's front bumper was damaged and that there was paint from appellant's car on the rear bumper of Mr. Park's car.[3]

Dr. Edward Aulisi, the neurosurgeon who treated Mr. Park later that day, testified that as a result of the accident one of Mr. Park's cervical disks ruptured through the surrounding ligaments and pushed against his spinal cord. The resulting condition, known as flaccid paralysis, left Mr. Park paralyzed from the neck down. Dr. Aulisi testified that, because of this condition, Mr. Park would be unable to move and that in all likelihood he could not hold himself erect. He also said that Mr. Park would have slumped over almost immediately after suffering the injury to his spinal cord. When asked hypothetically "which of the two impacts was the most likely and probable cause for [Mr. Park's] injuries," Dr. Aulisi replied, "I would say the second impact," i.e., the collision between appellant's car and Mr. Park's car. On cross-examination, Dr. Aulisi stated that Mr. Park suffered from a pre-existing condition known as spinal stenosis, which

1. The car that Mr. Park was driving had a two-part seat belt. The shoulder portion automatically moved across the driver's or passenger's torso as the car door was closed, but the waist portion had to be manually fastened.

2. Both Mr. Park and Ms. Yi specifically testified, however, that Mr. Park's car did not bounce back and forth after the first collision.

3. Metropolitan Police Officer Charles Poole, who responded to the accident, also testified that appellant's car had minor damage to the left front bumper and fender.

made him more susceptible to spinal injury.[4]

At the close of all the evidence, appellant moved for a directed verdict, but his motion was denied. His post-trial motion for a new trial or, alternatively, a judgment n.o.v. was also denied.

## II

Appellant argues that the trial court erred in allowing the case to go to the jury because Mr. Park failed to prove that appellant's conduct was the proximate cause of his injury, and that he was therefore entitled to judgment as a matter of law.[5] Specifically, appellant maintains that because the only evidence concerning proximate cause was the testimony of the treating physician, Dr. Aulisi, Mr. Park failed to prove a *prima facie* case of negligence.[6] For the reasons that follow, appellant's argument is without merit.

■■■ "[W]hen there is some evidence from which jurors could find the requisite elements of negligence, or when the case turns on disputed facts and the credibility of witnesses, the case must be submitted to the jury for determination." *Lyons v. Barrazotto,* 667 A.2d 314, 320 (D.C.1995) (citation omitted). A case may not be taken away from the jury on motion of the defendant if an impartial juror, considering all the evidence, could reasonably find in favor of the plaintiff. See, e.g., *Finkel-*stein v. District of Columbia, 593 A.2d 591, 594 (D.C.1991) (en banc).

■■■ In determining whether judgment should be entered as a matter of law for the defendant, the court must view the evidence in the light most favorable to the plaintiff, giving him the benefit of all reasonable inferences. *E.g., Osbourne v. Capital City Mortgage Corp.,* 727 A.2d 322, 324 (D.C.1999). Under this standard, issues of negligence and proximate cause can be taken from the jury and decided by the court only if "no reasonable person, viewing the evidence in the light most favorable to the prevailing party, could reach a verdict in favor of that party." *Oxendine v. Merrell Dow Pharmaceuticals, Inc.,* 506 A.2d 1100, 1103 (D.C.1986) (citations omitted); *accord, e.g., District of Columbia v. Wilson,* 721 A.2d 591, 596 (D.C.1998); *Lyons,* 667 A.2d at 320; *Corley v. BP Oil Corp.,* 402 A.2d 1258, 1263 (D.C.1979) ("Motions for a directed verdict deprive plaintiff of a determination of the facts by a jury and should, therefore, be granted sparingly" (citation omitted)). Such cases are very rare, and this is not one of them.

■■■ As we have said, judgment as a matter of law is proper only when the material facts are undisputed and when reasonable jurors could reach only one possible conclusion based on those facts. *See generally Goldsmith v. Tapper,* 748

---

4. During his testimony, Mr. Park said he was in good health before the accident in 1997. There was no evidence that Mr. Park's spinal stenosis was diagnosed at any time prior to the date of the accident.

5. Appellant challenges both the denial of his motion for a directed verdict and his subsequent motion for a judgment notwithstanding the verdict. Because the standard of review and the facts underlying each motion are identical, we consider whether appellant was entitled to a judgment as a matter of law under Super. Ct. Civ. R. 50(a). That rule

permits the granting of such a motion only if there is "no legally sufficient evidentiary basis for a reasonable jury to find" for the non-moving party.

6. *"The elements of a cause of action for negligence are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach." Taylor v. District of Columbia,* 776 A.2d 1208, 1214 (D.C.2001) (citation omitted).

A.2d 416, 419 (D.C.2000). This was clearly not the case here. The parties presented two distinct versions of the relevant events, and the jury was free to believe either one. *See, e.g., Abebe v. Benitez,* 667 A.2d 834, 836 (D.C.1995) ("Irrespective of which conclusion a jury might reach, the fact that more than one conclusion, material to the outcome of the case, might reasonably be drawn from the evidence demonstrates that a [judgment as a matter of law] should not [be] granted"). Mr. Park and Ms. Yi testified that they were initially involved in a minor accident and that, a few seconds later, appellant's car struck Mr. Park's car from the rear. From their testimony—irrespective of what the doctor said—a jury could reasonably find that the second collision was more violent and forceful than the first. Appellant testified, on the other hand, that he came to a complete stop and saw Mr. Park's car hit Ms. Yi's car twice, and then roll backward and nudge his car. This was a different version of the facts, and the jury was free to reject it.

■ In addition to these contradicting versions of the accident itself, the parties also disagreed over how Mr. Park sustained his injuries. Mr. Park claimed that his paralysis occurred after appellant's car crashed into his, but appellant asserted that it occurred immediately after the first crash between Mr. Park and Ms. Yi. With these divergent views of the facts, it would not have been proper or permissible for the court to enter judgment as a matter of law. "If there is room for a difference of opinion, the wise course is for the trial judge to allow the case to go to the jury." *Corley,* 402 A.2d at 1263 (citation omitted).

Viewing the evidence in the light most favorable to Mr. Park, we hold that a reasonable jury could have concluded that his injuries were the result of the second collision, basing that conclusion on the testimony of not only Dr. Aulisi, but also Ms. Yi and Mr. Park. *See Abebe,* 667 A.2d at 836. Furthermore, because the case turned on witness credibility and disputed facts, a judgment as a matter of law would have been improper and legally erroneous. *See Lyons,* 667 A.2d at 320. The trial court committed no error when it denied both appellant's motion for a directed verdict and his motion for judgment notwithstanding the verdict.

### III

Appellant contends that Mr. Park's designation of Dr. Aulisi as an expert witness, pursuant to Super. Ct. Civ. R. 26(b)(4), was inadequate because the pretrial document outlining his expected testimony did not include the word "causation" or "cause" and therefore did not allow him to offer an opinion on how Mr. Park sustained his injuries.[7] Because of this omission, appellant maintains that Mr. Park never properly designated an expert on the issue of causation, and that Dr. Aulisi's testimony concerning Mr. Park's injuries was erroneously admitted.

■ Appellant's argument misses the mark. Regardless of what the pretrial statement might or might not say about the expected testimony of an expert witness, this court has held that the witness' testimony is properly admitted, notwithstanding any failure to mention certain words in the pretrial documents, if the actual testimony does not surprise the opposing party. *See, e.g., Kling v. Peters,* 564 A.2d 708, 714 (D.C.1989) (holding that a doctor could still testify to the cause of

---

7. Mr. Park's Rule 26(b)(4) designation for Dr. Aulisi stated: "As a direct result of his low speed motor collision of 8/12/97, Plaintiff [Mr. Park] suffered a C3–4 HNP, ligamentous disruption of the spinal canal compression and instability and quadriparesis."

the plaintiff's injury despite not having referred to causation in a Rule 26(b)(4) pretrial statement). Since Mr. Park's designation, *supra* note 7, put appellant on notice about the subject of Dr. Aulisi's testimony, allowing him to answer a hypothetical question about how Mr. Park might have sustained his injuries was not improper. *See Kling,* 564 A.2d at 714; *see also United States v. Watson,* 335 U.S.App. D.C. 232, 240, 171 F.3d 695, 703 (1999) (expert witness may respond to hypothetical questions that mirror facts already in evidence). Furthermore, even without Dr. Aulisi's specific testimony, the jury could reasonably have inferred causation from the testimony of other witnesses, given the very close proximity in time between the second collision and the injury.[8] *See Bahura v. S.E.W. Investors,* 754 A.2d 928, 942 (D.C.2000); *Otis Elevator Co. v. Tuerr,* 616 A.2d 1254, 1260 (D.C. 1992).

Moreover, and contrary to appellant's argument, expert medical testimony on the issue of causation was not even necessary (although it was certainly helpful) because Mr. Park's case did not involve a complex medical question that required expert testimony. The issue before the jury was not one of medical causation[9] but, rather, which of the two collisions was the proximate cause of the injury. "Where laymen can say, as a matter of common knowledge and observation, that the type of harm would not ordinarily occur in the absence of negligence, the jury is allowed to infer negligence without expert testimony being presented." *Harris v. Cafritz Memorial Hospital,* 364 A.2d 135, 137 (D.C.1976) (citation omitted), *cert. denied,* 430 U.S. 968, 97 S.Ct. 1650, 52 L.Ed.2d 359 (1977); *accord, e.g., Washington Hospital Center v.*

*Martin,* 454 A.2d 306, 308–309 (D.C.1982) (expert medical testimony not necessary when claim was based on negligence of hospital staff in allowing elderly patient to fall out of bed, which did not involve issues of medical judgment and skill).

█ Finally, appellant maintains that his liability for Mr. Park's injuries should be limited because Park's pre-existing spinal stenosis made him more susceptible to injury. However, it is a firmly established principle of tort law that a tortfeasor takes his victim as he finds him. Under this principle, sometimes known as the "thin skull" or "eggshell skull" doctrine, a negligent defendant is liable for harm resulting from his own negligent conduct even though the harm was aggravated by the particular plaintiff's condition at the time of that negligent conduct. *See, e.g., John Hancock Mutual Life Insurance Co. v. Serio,* 176 A.2d 874, 876 (D.C.1962); *Vosburg v. Putney,* 80 Wis. 523, 50 N.W. 403 (1891). Mr. Park's pre-existing condition cannot relieve appellant of liability.

IV

Appellant contends that the trial court abused its discretion when it precluded him from cross-examining the accident reconstruction expert, Amit Reizes, about his qualifications and experience. Appellees respond that because appellant had an opportunity to question Mr. Reizes concerning his background when he was initially tendered as an expert, but failed to do so, we should hold that he waived this claim of error.

At the time Mr. Reizes was offered as an expert, the following discussion took place between counsel and the court:

---

8. Appellant was also free to ask Dr. Aulisi a reverse hypothetical about other potential causes of the injury, but he never did so.

9. It was essentially undisputed that the trauma to Mr. Park's spinal cord caused his paralysis.

[PLAINTIFFS' COUNSEL]: At this time I would offer his curriculum vitae, No. 23, as an exhibit and offer Mr. Reizes as an expert in accident reconstruction.

THE COURT: Is there any voir dire?

[DEFENDANTS' COUNSEL]: No voir dire, your honor.

THE COURT: Is there any objection?

[DEFENDANTS' COUNSEL]: No objection.

THE COURT: So admitted and so qualified.

Despite his failure to object or to conduct any voir dire, appellant's counsel later attempted to challenge Mr. Reizes' credentials on cross-examination by asking him how long he had considered himself an expert in the area of accident reconstruction. Mr. Park's counsel objected, claiming that the opportunity to cross-examine Mr. Reizes about his qualifications had been waived. The court agreed and said to appellant's counsel, "If you want to test his conclusions, or test his procedures or test the materials that he relied on, that's fine, but we're not going back behind his CV when I already asked you about [sic] because you waived your right to ask him that . . . ."

In his brief before this court, appellant highlights several facts which, he asserts, would diminish Mr. Reizes' qualifications as an expert. Appellees contend that this assertion comes too late: that appellant had ample opportunity to explore Mr. Reizes' alleged lack of expertise before the court accepted him as an expert, but failed to do so then at his own peril. Appellant counters that he was not seeking to estab-

lish that the expert was not qualified to testify at all, but only to show that his qualifications were not as strong as they might appear to be. In other words, as we understand appellant's argument, he was trying to challenge "the degree of the . . . expert's qualifications," which goes only to the weight of his testimony, not to its competency or admissibility. See Benjamin v. Hot Shoppes, Inc., 185 A.2d 512, 515 n. 2 (D.C.1962).

■ We need not decide whether the trial court erred in refusing to allow counsel to cross-examine Mr. Reizes in front of the jury about his qualifications, because we are satisfied that if there was any error, it was surely harmless. Mr. Reizes added relatively little to the plaintiffs' case. As we said earlier, the main issue—indeed, the only real issue—before the jury was which of the two collisions caused Mr. Park's injury. Mr. Reizes' testimony, which consisted primarily of what Mr. Park in his brief characterizes as "basic physics," merely corroborated that given by Mr. Park, Ms. Yi, and Dr. Aulisi on the issue of proximate cause. The testimony of those three witnesses constituted the heart of the plaintiffs' case, because it focused on the critical issue of chronology. Officer Poole also gave useful testimony about the condition of the vehicles after the two collisions. Even if Mr. Reizes had not testified at all, we can "say, with fair assurance," that the jury's verdict would not have been any different. Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); see R. & G. Orthopedic Appliances, Inc. v. Curtin, 596 A.2d 530, 538–540 (D.C.1991) (applying Kotteakos standard in a civil case).[10] We hold accordingly that if the trial court

10. Mr. Reizes did testify that, given the relative sizes of the vehicles involved, appellant's version of the accident was not plausible. We do not think that this testimony, even though

it undermined to some extent appellant's version of what happened, made any significant difference in the outcome of the trial.

erred—which we do not decide—its error was harmless.

## V

Finally, appellant contends that the trial court erred in failing to make an exception to the collateral source rule so as to permit more extensive cross-examination of Mr. Park's life-care planner, Patricia Bonner.

Because Mr. Park was injured within the scope of his employment, the cost of his medical treatment and rehabilitation was covered in part by his employer's workers' compensation carrier, Hartford Insurance Company. In November 1998 Hartford hired Ms. Bonner, a registered nurse, to work as Mr. Park's case manager and to prepare a life-care plan detailing the costs associated with Mr. Park's ongoing medical needs.[11] Later in the course of this litigation, in February 2001, Ms. Bonner was hired again by Mr. Park's attorneys to prepare another life-care plan. The costs estimated in these two plans were different: $1,200 per year in 1998 and $10,000 per year in 2001.

During his cross-examination of Ms. Bonner, counsel for appellant sought to ask for whom she was working when she created the first life-care plan in 1998. Counsel claimed that effective cross-examination would be hindered without identifying to the jury how and why Ms. Bonner originally came into the case as a life-care planner with Hartford. After considerable discussion outside the presence of the jury, the court ruled that Ms. Bonner could be cross-examined about why there was such a large discrepancy between the figures in the two plans and why she ceased caring for Mr. Park in 1998, but that she could not be asked questions that would elicit a response referring to Hartford or to workers' compensation.[12] We find no legal error and no abuse of discretion in this ruling.

■ The collateral source rule provides, as a general proposition, that an injured party may recover full compensatory damages from a tortfeasor regardless of the payment of any amount of those damages by an independent party (a "collateral source"), such as an insurance carrier. *See* 3 JEROME H. NATES, *et al.*, DAMAGES IN TORT ACTIONS § 17.00 (rev. ed.2003) (hereafter "NATES"); *see also* RESTATEMENT (SECOND) OF TORTS § 920A (1977) (collateral benefits are not subtracted from a plaintiff's damage award even if insurance coverage helps to pay for the treatment of injuries); *Jacobs v. H.L. Rust Co.*, 353 A.2d 6, 7 (D.C.1976) (when plaintiff is reimbursed for his injuries "by a third party who is independent of the wrongdoer, the plaintiff may still seek full compensation from the tortfeasor even though the effect may be a double recovery" (citation omitted)). In addition, the rule prevents the admission of evidence showing that benefits were paid by a collateral source, except when that evidence clearly has probative value on an issue unrelated to damages. *See* 3 NATES § 17.00.

■ Appellant claims that the trial court should have made an exception to

11. Although the record is not entirely clear on this point, Hartford apparently sought preparation of the life-care plan in order to estimate the amount needed for the final settlement of its medical lien.

12. When appellant's counsel later asked Ms. Bonner about the discrepancy, she explained that at the time of the 1998 plan, Mr. Park was being cared for at home by a family physician. The 2001 plan, however, reflected the fact that Mr. Park's condition had deteriorated in the intervening years and included the costs of other items, such as a more aggressive rehabilitation program and additional medications.

this rule and allowed him to let the jury know that Ms. Bonner was employed by a workers' compensation carrier in 1998. We disagree. Because evidence that Ms. Bonner worked for Hartford (or any other insurance carrier) would have been of little or no relevance and could well have led the jury down a path where it should not go, it was properly excluded as a topic for cross-examination. *See Jacobs*, 353 A.2d at 7; *see also Williams v. United States*, 805 A.2d 919, 927 (D.C.2002) (cross-examination is subject to reasonable limits, imposed at the discretion of the trial judge, "to prevent inquiry into matters having little relevance or probative value").

It is true that counsel for appellant told the court that the reason he sought to inquire about the two different figures in the life-care plans was to explore the possibility that Ms. Bonner might have been minimizing costs when she was working for Hartford and maximizing them when asked to prepare a plan in connection with Mr. Park's negligence action against appellant. Such an inquiry into a witness' potential bias has always been a proper subject of cross-examination. *See, e.g., Joyner v. United States*, 804 A.2d 342, 348 (D.C.2002). But to go further and inquire who her employer was would stretch the boundaries of cross-examination beyond permissible limits. The notion that the jury needed to know why Ms. Bonner created a life-care plan in 1998 was irrelevant to the issues before the jury—namely, whether or not appellant was liable for Mr. Park's injuries and, if so, what was the proper measure of damages. Counsel's claim that the jury ought to know the identity of Ms. Bonner's employer when she drafted the first life-care plan in 1998 was a creative but impermissible attempt to put before the jury evidence that was not only irrelevant, but also prejudicial. Its exclusion was not an abuse of discretion, nor was there any legal error in the court's ruling.

## VI

For the foregoing reasons, the judgment is

*Affirmed.*