Tammy SOWELL, Appellant,

v.

John WALKER, et al., Appellees.

No. 98–CV–1172.

District of Columbia Court of Appeals.

Argued Jan. 5, 2000.
Decided June 22, 2000.

Julian Karpoff, Arlington, VA, argued the case for appellant. Timothy Falls, Washington, DC, filed the brief.

G. Clifton Patterson, III, Rockville, MD, for appellees.

Before SCHWELB and WASHINGTON, Associate Judges, and KERN, Senior Judge.

SCHWELB, Associate Judge.

## I.

## THE FACTS

### A. *Background.*

On May 11, 1996, "Smokey," a Labrador/Husky dog belonging to appellees Brenda and John Walker, attacked appellant Tammy Sowell, a letter carrier who was attempting to deliver mail at the time.[1] Ms. Sowell was knocked to the ground, and Smokey inflicted serious bite wounds on her legs.[2] It appears that Smokey may not have been a particularly "distinguished, sociable [or] upright canine." *Cf. Williams v. Redwood*, 108 Daily Wash. L. Rptr. 277 n* (Super.Ct.D.C.1980). On the contrary, he had been trained to attack on command. In fact, Smokey had gone after Ms. Sowell on a previous occasion, and he had bitten other people as well.

On July 8, 1996, Ms. Sowell filed suit against the Walkers and Mrs. Walker's sister, Lindella Hopkins, alleging strict liability, negligence, and a violation of the "Dangerous Dog" statute. D.C.Code §§ 6–1021.1 *et seq.* (1995). Ms. Sowell prayed for compensatory and punitive damages.

Following pretrial proceedings before the motions judge, Honorable Shellie F. Bowers, the case was tried to a jury before Honorable Rufus G. King, III. At the conclusion of the trial, the jury found that Ms. Hopkins did not "own" or "keep" Smokey, and the court entered judgment in Ms. Hopkins' favor on the basis of this finding.[3] The jury further found, however, that Mr. and Mrs. Walker owned Smokey, knew that he was dangerous, and failed to take reasonable steps to protect the plaintiff from the foreseeable danger of injury posed by the dog. The jury awarded a total of $52,000 to Ms. Sowell in compensatory damages against the Walkers; this sum was allocated on the "Verdict Sheet" as follows:

| | |
|---|---|
| Medical expenses incurred in the past: | $ 6,000 |
| Future medical expenses: | $24,000 |
| Loss of earnings: | $17,000 |
| Non-economic damages (including, disfigurement, pain and suffering, mental anguish, etc.): | $ 5,000 [4] |

On May 8, 1998, the trial judge reduced the award for future medical expenses from $24,000 to $5,000, and the total verdict from $52,000 to $33,000, because, as the judge later wrote, "[p]laintiff gave no notice in discovery or at pretrial that her witness would testify about future hospital

---

1. Unfortunately, mail carriers frequently encounter biting dogs. Indeed, 2,725 postal employees were bitten by dogs in 1999. *See Top 10 'Dog Bite' Cities Announced During National Dog Bite Prevention Week*, PR Newswire, May 19, 2000. The United States Postal Service recently joined with the Humane Society of the United States in declaring May 21–27, 2000 to be National Dog Bite Prevention Week. *See id.*

2. "Dynamite," a second dog belonging to the Walkers, was also involved in the incident, but did not bite Ms. Sowell.

3. In her brief on appeal, Ms. Sowell asked this court to set aside the judgment in favor of Ms. Hopkins, contending, *inter alia*, that the finding that Ms. Hopkins did not "keep" the dog lacked evidentiary support and was con-

trary to Ms. Hopkins' answer and to the jury's other findings relating to Ms. Hopkins. At oral argument, however, counsel for Ms. Sowell—not the author of the brief—advised the court that his client was dropping this aspect of the appeal. Through the attorney who prepared the brief, Ms. Sowell filed a post-argument motion to reinstate the claim against Ms. Hopkins, contending that argument counsel's abandonment of that claim was unauthorized. On February 25, 2000, in a brief per curiam order, the court denied the motion to reinstate.

4. The jury found that the actions of John Walker and Brenda Walker had not been shown to be "malicious and in willful, wanton, or reckless disregard of plaintiff's rights." Accordingly, no punitive damages were awarded.

expenses." Ms. Sowell filed a motion for a new trial, but the judge denied the motion on July 23, 1998 in a seven-page written order.

Ms. Sowell has appealed, contending, as she did in the trial court, that the trial judge committed reversible error by reducing the jury's award and by refusing to grant a new trial as to damages. We affirm.

## B. *Pretrial Proceedings*

As a result of Smokey's assault on her, Ms. Sowell sustained substantial scarring on her legs. After consulting a number of physicians, she was referred to Ivens LeFlore, M.D., a plastic surgeon. Dr. LeFlore advised Ms. Sowell that surgery could reduce the scarring, but that it would not be possible to remove the scars entirely. At the time of trial, no such surgery had been performed.

When Ms. Sowell consulted Dr. LeFlore, discovery had already been closed. On November 27, 1997, the motions judge issued a pretrial order in which he directed the plaintiff, *inter alia*, to provide the defendants, no later than February 20, 1998, with a Rule 26(b)(4) statement with respect to Dr. LeFlore.[5] Ms. Sowell filed no objection to the pretrial order, nor did she request that it be set aside. On February 19, 1998, however, Ms. Sowell's trial attorney notified opposing counsel by letter that

the Plaintiff will call Dr. Ivens LeFlore solely as a treating physician. By advising you in advance of the nature of his testimony in accordance with the [c]ourt's order, we do not waive our position that he is not an expert witness covered by Rule 26. Dr. LeFlore will testify that he has seen Ms. Sowell solely for the purpose of determining wheth-

er he can remove or reduce the scars inflicted by your clients' dog. He will testify relative to his current treatment plan and what he expects to accomplish. He will also refer to the enclosed pictures which we are adding to our list of exhibits since they are related to this testimony.

Counsel's letter contained no reference to the costs of any possible future hospitalization.

On April 14, 1998 the defendants filed a motion to strike certain claims by Ms. Sowell or, in the alternative, to continue the trial. In that motion, the defendants contended, *inter alia*, that plaintiff's counsel's letter of February 19, 1998, in which counsel had summarized Dr. LeFlore's expected testimony, did not satisfy the requirements of Rule 26(b)(4) or of the pretrial order. In opposition to the motion, the plaintiff argued that Dr. LeFlore was Ms. Sowell's treating physician and that Rule 26(b)(4) did not apply. *See, e.g., Adkins v. Morton,* 494 A.2d 652, 656 (D.C. 1985); *Yellow Cab Co. v. Hicks,* 224 Md. 563, 168 A.2d 501, 505 (1961). In addition, nine days before the trial began, plaintiff's trial attorney provided defense counsel with a copy of Dr. LeFlore's handwritten notes. These notes stated, in pertinent part, as follows:

I fully discussed scar revisions, the risks, complications.

The scars are permanent but can be improved w/scar revisions.

The surgeon's cost for one to two staged revisions could range between $4,000.00—5,000.00.

The surgery would be performed on a[n] out patient [basis]. The hospital costs would be additional.

On April 22, 1998, the motions judge entered a brief order denying the defen-

---

**5.** Rule 26(b)(4)(A)(i) of the Superior Court's Rules of Civil Procedure provides:

A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the sub-

ject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

dants' motion to strike claims, and he refused to grant a continuance. Six days later, the case was certified to Judge King and the trial began.

## C. *The trial.*

At the outset of the trial, defense counsel attempted to raise, as a preliminary matter, his contention that the plaintiff had not complied with the pretrial order. Implicitly invoking the "law of the case" doctrine, the judge declined to entertain counsel's claim:

> The Court: I think the [Rule 26(b)(4) issue is] resolved, unless Judge Bowers tells me something different.
>
> Mr. Patterson:[6] Your Honor, I would like to address that.
>
> The Court: I'll let you make a record on your position, but if you want to ask for reconsideration, Judge Bowers is the person to address that to.

The defendants did not seek reconsideration by Judge Bowers.

The plaintiff then presented her evidence. She established, through her own testimony and the testimony of other witnesses, that Smokey had attacked her on a previous occasion, that he had bitten other persons in the past, and that the defendants had received a notice from the Postal Service to the effect that the dog was dangerous. Ms. Sowell described in some detail the May 11, 1996 incident. She testified that she missed several months of work, that she had suffered severe pain, that she had undergone extensive physical therapy, and that she had received psychological counseling for nightmares and for post-traumatic stress disorder. Ms. Sowell further related that one of her physicians had referred her to Dr. LeFlore for a determination regarding whether anything could be done about the scars on her legs.

Dr. LeFlore was qualified as an expert witness for the plaintiff. After describing Ms. Sowell's injuries and the possibility of alleviating the scarring through surgery, Dr. LeFlore stated that, in his opinion, most of the scars would require one operation, but that "[t]he ones on the front of the legs will require two and perhaps even three surgical procedures." These procedures, according to Dr. LeFlore, would be performed "about a year apart." Dr. LeFlore estimated that his own charges would "[p]robably [be] between $4,000 [and] $5,000. If you need a third one, it may add another thousand to it, so the range would be between $4,000 [and] $6,000 total." The hospital, the witness explained, has to be paid separately.

In response to a question regarding how much a hospital would charge, Dr. LeFlore testified that this would depend on which hospital Ms. Sowell selected. He stated that

A. . . . each hospital is going to differ, but if you take two hours of surgery, which is basically what it would take to do this, a patient is— the hospital anesthesia plus the hospital is a minimum of about $7,000.

Q. Per treatment?

A. Per treatment.

Q. So, we're talking about three treatments, Doctor?

A. The third one may not be as long, we can probably do the third one in about an hour.

At the conclusion of the direct examination of Dr. LeFlore, defense counsel approached the bench and objected that "again for the record, this is the first time I've been produced with anything with regards to fees of the hospital that was in today's testimony." The judge inquired whether a Rule 26(b)(4) statement had been provided in conformity with the motions judge's order and whether Dr. Le-

---

**6.** G. Clifton Patterson, III, Esquire, represented the defendants at trial and is also their attorney on appeal.

Flore's estimate of future hospital expenses had been disclosed to the defense. Ms. Sowell's attorney pointed to the statement in Dr. LeFlore's notes that "[t]he hospital costs would be additional," and he also referred to his letter of February 19, 1998. The trial judge, however, was not persuaded, noting that the letter contained no reference to the cost of hospital care. He stated that defense counsel did not need to cross-examine because "I'll strike that, the dollar amount." The judge then told Ms. Sowell's attorney:

> You were given the requirement in the order to file a statement for [Dr. Le-Flore]; that statement is not enough to put him in a position to start talking about hospitals he doesn't know about for $7,000 a pop, so I'll sustain.

In conformity with the judge's ruling, defense counsel did not cross-examine Dr. LeFlore regarding the doctor's estimate of Ms. Sowell's future hospital costs.

The judge did not disclose to the jurors that Dr. LeFlore's testimony regarding future hospital expenses had been stricken. During deliberations, the jury sent the judge a note inquiring about the "total estimated cost for reconstructive surgeries including hospital stay," and the judge asked for counsel's views as to the proper response. Ms. Sowell's attorney responded as follows:

> Your Honor indicated that when that problem would surface, we would just tell them—give them the doctor's numbers for his costs, $5,000—I believe that's what the doctor said, $4,000 $5,000.

The judge instructed the jurors, however, that their recollection of the testimony would control.

Ultimately, as previously noted, the jury awarded Ms. Sowell damages totalling $52,000, including $24,000 for future medical expenses. In conformity with his decision to strike testimony regarding anticipated hospital costs, the judge reduced the award by $19,000, the amount that the judge viewed as representing those costs.

Ms. Sowell moved the court to amend the award or, in the alternative, for a new trial as to damages. The judge denied the motion, reasoning in pertinent part as follows:

> Plaintiff also argues that the verdict should be amended to allow the jury award regarding future hospital costs. The [c]ourt struck these costs after determining that Defendant had not been given notice of such testimony. Plaintiff argues that damages may not be stricken from a jury verdict where there is no method to determine how the jury apportioned its verdict. Plaintiff asserts that the [c]ourt could only speculate as to how the jury intended the $24,000.00 for future costs to be used. However, because Dr. LeFlore testified that future hospital treatment would cost between $19,000.00 and $20,000.00, it was not mere speculation by the [c]ourt to find $19,000.00 would be the amount of future hospital costs. Plaintiff also argues that if the jury had known the [c]ourt was going to disallow damages for future hospital costs, the jury might have awarded more damages for disfigurement and humiliation to make up for this amount being struck from the award. However, this is not a permissible option for the jury in awarding compensatory damages.

## II.

### LEGAL DISCUSSION

Ms. Sowell contends that the trial judge erred in reducing the jury's award. She claims that this court should order the trial judge to reinstate the verdict or, in the alternative, that she be awarded a new trial on the issue of damages. Ms. Sowell has presented a number of different arguments in support of her position. We address them in turn.

### A. *"Law of the case."*

■ Ms. Sowell asserts that the trial judge's order striking Dr. LeFlore's testi-

mony regarding estimated future hospital expenses was inconsistent with the motions judge's pretrial ruling denying the defense motion to strike or continue. According to Ms. Sowell, the trial judge violated the rule of the "law of the case." [7] We do not agree.

"The law of the case doctrine prevents relitigation of *the same issue in the same case* by courts of coordinate jurisdiction." *Johnson v. Capital City Mortgage Corp.*, 723 A.2d 852, 857 (D.C.1999) (emphasis added; citations omitted). The doctrine has no application where the issue presented to a second judge is not identical to the question previously decided by the first judge. *See Brownfield v. Landon*, 113 U.S.App.D.C. 248, 252, 307 F.2d 389, 393, *cert. denied*, 371 U.S. 924, 83 S.Ct. 291, 9 L.Ed.2d 232 (1962). "A judge of the trial court is not bound by another judge's earlier ruling if the later ruling addressed a legal issue differing from that presented for the first ruling." *Varela v. Hi–Lo Powered Stirrups, Inc.*, 412 A.2d 13, 17 (D.C.), *rev'd on unrelated grounds*, 424 A.2d 61 (D.C.1980) (en banc). Moreover,

> [l]ong ago it was decided that interlocutory rulings do not settle the law of a case and are not conclusive or binding on the trial judge, who has the ultimate responsibility of deciding the case on the merits.

*District of Columbia v. Faison*, 278 A.2d 688, 690 (D.C.1971) (quoting *McNeill v. Jamison*, 116 A.2d 160, 161 (D.C.1955)).

In the present case, the issue before Judge Bowers prior to trial was whether a purported Rule 26(b)(4) statement should be stricken. The question decided by Judge King at trial was whether certain evidence should be admitted. The two issues are related, but they are nevertheless significantly different.

The motions judge was asked, in effect, to disapprove, as deficient under Rule 26(b)(4) and the Pretrial Order, the plaintiff's summary of Dr. LeFlore's anticipated testimony. When that precise issue arose again at the beginning of the trial, Judge King invoked the "law of the case" doctrine; refused to second-guess the motions judge, and held that any request for reconsideration should be made to Judge Bowers, who had made the original ruling.

Subsequently, Dr. LeFlore testified regarding anticipated hospital expenses of approximately $7,000 per surgery for the first two operations and a slightly smaller sum for the third one. The defendants claimed unfair surprise, and the question before the trial judge was whether this testimony should be admitted notwithstanding the plaintiff's failure to disclose its substance to the defense in advance of trial. The trial judge was thus called upon to decide whether the plaintiff should be permitted to introduce evidence of hospital expenses which had not been provided to the defense in discovery and which was disclosed for the first time in the presence of the jury. That question had never come before the motions judge, and there is no evidence that Judge Bowers was ever apprised of Dr. LeFlore's estimate of anticipated hospital costs. Indeed, we have no

---

**7.** The defendants claim that Ms. Sowell did not present her "law of the case" claim to the trial court and that the issue has not been preserved. Ms. Sowell argues that the doctrine was invoked, albeit not in those words, in her motion for a new trial.

We have previously declined to address a claim based on "law of the case" when that claim has been raised for the first time on appeal. *See Sherman v. District of Columbia*, 653 A.2d 866, 868 n. 2 (D.C.1995); *cf. Blyther v. Chesapeake & Potomac Tel. Co.*, 661 A.2d 658, 658 n. 1 (D.C.1995) (per curiam) (declin-

ing to decide whether a party preserved a "law of the case" claim where she first raised it in a motion for reconsideration in the trial court). In this case, the trial judge applied the doctrine, in substance if not by name, at the beginning of the trial, and it was arguably unnecessary for plaintiff's counsel to reiterate a legal theory of which the judge was obviously well aware. In any event, for the reasons stated in the text, Ms. Sowell cannot prevail on this claim even if we assume that it has been duly preserved.

reason to believe that, if the issue presented to Judge King had been submitted to Judge Bowers, Judge Bowers' disposition of it would have been different from the ruling ultimately made by Judge King. Judge Bowers' order declining to strike certain of Ms. Sowell's claims could not have been designed to give the plaintiff *carte blanche* to present any conceivable testimony by Dr. LeFlore, no matter how far that testimony went beyond the summary contained in plaintiff's counsel's February 19 letter. Accordingly, the two judges did not decide the same question, and the "law of the case" doctrine has no application.

### B. *"Treating physician."*

According to Ms. Sowell, "[t]he trial court erred in disallowing the testimony of Dr. LeFlore on the basis of a claimed violation of [Super. Ct. Civ.] R. 26(b)(4) because[, *inter alia*,] Dr. LeFlore was a treating physician for whom no statement was required." Ms. Sowell claims that Rule 26(b)(4) has no application because "the facts and opinions possessed by [Dr. LeFlore] were [not] obtained for the specific purpose of preparing for the litigation in question...." *Adkins, supra,* 494 A.2d at 657. We need not decide whether Dr. LeFlore's testimony about hypothetical future hospital costs would fall within the *Adkins* doctrine, for Ms. Sowell's claim fails regardless of whether Dr. LeFlore is viewed as a treating physician or as an expert duly qualified by the court to present expert testimony.

Indispensable to the proper resolution of this issue is a recognition of the sequence in which the relevant events occurred. Dr. LeFlore did not examine Ms. Sowell until after discovery had been closed. In order to avoid surprise to the defense, the motions judge included in his pretrial order a provision requiring the plaintiff to furnish the defense with "the substance of the facts and opinions to which [Dr. LeFlore was] expected to testify and a summary of the grounds for each opinion." *See* Super. Ct. Civ. R. 26(b)(4)(A)(i). Ms. Sowell's attorney did not object to this order. Even if counsel had objected, however, and even if the motions judge had ruled that Dr. LeFlore was a treating physician only, we are confident that the judge would not have required the defense to go to trial without any discovery as to Dr. LeFlore's expected testimony.[8] Indeed, under a system that has long ago abandoned trial by ambush, a contrary scenario is inconceivable.

In any event, given the clear requirements of the pretrial order with respect to Dr. LeFlore, defense counsel had the right to assume that the plaintiff would provide him with the substance of the facts and opinions which her counsel expected to elicit from Dr. LeFlore, including the plaintiff's anticipated medical expenses. Ms. Sowell's claim founders on the reality that the pretrial order, which treated Dr. LeFlore as an expert witness, remained in effect.[9] The trial judge could reasonably conclude that by failing to disclose Dr. LeFlore's proposed testimony regarding future hospital costs, the plaintiff's attorney did not fully comply with the motions judge's order.[10]

---

8. Ms. Sowell argues that the motions judge precluded further discovery by the defendants as a sanction pursuant to Super. Ct. Civ. R. 37(b) for previous noncompliance with their discovery obligations. The judge did impose sanctions against the defendants, but awarded only $200 in counsel fees, notwithstanding the plaintiff's request for $3,500. This suggests that the judge did not regard the defendants' noncompliance as being as egregious as the plaintiff claimed it to be.

9. The motions judge's denial of the defense motion to strike or for a continuance cannot fairly be viewed as an implied repeal or vacation of the pretrial order.

10. We note that in her post-trial motion to amend the verdict or, in the alternative, for a new trial, Ms. Sowell's attorney stated, in pertinent part, that

    to challenge the testimony of a treating physician on the basis that the Defendants had not been advised of the particulars of

C. *The sufficiency of the plaintiff's disclosure.*

■ Ms. Sowell next asserts that her counsel had made a sufficient pretrial disclosure of Dr. LeFlore's expected testimony and that the judge therefore erred in striking the evidence regarding future hospital costs. We are not persuaded by this contention.

■ The decision which Ms. Sowell seeks to challenge is quintessentially discretionary in nature. *See, e.g., Corley v. BP Oil Corp.,* 402 A.2d 1258, 1261 (D.C. 1979). The trial judge had the "inherent power to apply sanctions for a breach of the duty to supplement responses, including the power to exclude evidence, but the court necessarily has wide discretion in these matters, and [was] not required to apply sanctions...." *Id.* (quoting *Hollins v. Sneed,* 300 A.2d 447, 449 n. 4 (D.C.1973)) (citation and internal brackets omitted). In *Corley,* the court went on to explain the applicable principles:

> Given the wide latitude of a trial judge in overseeing discovery and the trial process, we cannot say that the limitation of expert testimony to the theory contained in the supplemental answer was an abuse of discretion. It was within the court's discretion to restrict the expert testimony in this fashion, rather than striking the supplemental answer as appellee requested. The partial limitation on testimony was tailored to effectuate the primary purpose of the liberalized discovery rules: prevention of unfair surprise at trial.

*Id.* at 1262.

In the present case, it is undisputed that the plaintiff's first disclosure to the defendants of anticipated hospital expenses of "$7,000 a pop" came during the direct examination of Dr. LeFlore.[11] This previously undisclosed evidence was of great importance; it ultimately accounted for more than 36% of the jury's total award ($19,000 of $52,000). The trial judge could reasonably find that this information should have been provided to defense counsel under the terms of the pretrial order.

Ms. Sowell argues that "it was an abuse of discretion for the trial court to revisit the issue mid-trial, while the witness was on the stand, when the problem could easily have been addressed pre-trial." In our view, however, the trial judge was not "revisiting" the issue at all. It was in mid-trial that the prospect of approximately $19,000 in anticipated hospital costs was first disclosed by the plaintiff, and it was then that the court dealt with it for the first time.

Ms. Sowell also contends that, prior to trial, the defendants had received the doctor's notes, as well as her counsel's February 19 letter, and that "[i]f appellees desired further elaboration upon the information provided by the doctor, the appropriate vehicle was to take his deposition." Discovery, however, had been

the hospital costs is grotesque since *the witness could only hazard a guess in any event based on experience rather than expertise.* In that regard, he was giving a lay opinion, rather than an expert opinion, since [that opinion was] not based upon special training or based on data supplied by others for that purpose.

(Emphasis added.) The concession that Dr. LeFlore's estimate of the hospital costs was not expert testimony was potentially significant, for we do not agree with the contention that such an estimate could be admitted if Dr. LeFlore was a lay witness. In our view, the amount *that* an unidentified hospital would charge for surgery to alleviate scars is "a matter beyond the ken of the average juror,"

*Phillips v. District of Columbia,* 714 A.2d 768, 773 (D.C.1998), and we know of no authority for admitting a "guess" as "lay opinion." The defendants have not, however, asked us to affirm the judgment on the basis of the plaintiff's concession that Dr. LeFlore was merely guessing.

11. Ms. Sowell points to the indication in Dr. LeFlore's notes that "[the] hospital costs would be additional." In our view, however, this is no disclosure at all. If Dr. LeFlore had given only this testimony without elaboration, then a jury award for hospital costs in any amount would have been patently speculative.

closed, and the pretrial order dealt with the plaintiff's proposal to call Dr. LeFlore as an additional witness by requiring the plaintiff to provide the defense with the substance of Dr. LeFlore's testimony. Although it might have been prudent for the defense to protect its flank by requesting that discovery be reopened,[12] we cannot say that the trial judge was *required* to permit the plaintiff to profit from what the judge regarded as her non-compliance with the pretrial order.

■ Finally, Ms. Sowell argues that the judge acted precipitously in striking the testimony without giving her an opportunity to cure the nondisclosure. She claims that if the defendants had been given a brief mid-trial continuance to investigate the issue of hospital costs, the effects of any violation could have been dissipated. We agree that striking testimony can be a severe remedy,[13] especially where it significantly limits the relief available to the plaintiff, and that an alternative resolution should be sought where possible. Ms. Sowell's attorney did not, however, request a continuance in the trial court, and even assuming, without deciding, that a brief mid-trial continuance could have resolved or alleviated the problem, any interruption of a jury trial entails obvious costs. We do not believe that the trial judge committed plain error by not ordering a continuance, *sua sponte*, or by not exploring, on his own initiative, alternative resolutions not proposed to him by counsel. The judge was obviously of the opinion that the problem was brought on by the plaintiff's unjustified failure to disclose information that ought to have been disclosed. In our view, the judge's assessment was not unreasonable.

### D. The nondisclosure to the jury of the judge's decision to strike the evidence of future hospital costs.

■ Ms. Sowell next asserts that even if the trial judge's decision to strike Dr. LeFlore's testimony regarding hospital costs was not an abuse of discretion, the judge's failure to apprise the jury of this ruling was error and impaired the jury's ability to carry out its responsibilities. In her brief, Ms. Sowell argues, in pertinent part, that "[i]f the jury had been informed not to consider a portion of the evidence concerning future medical costs, it might well have returned a larger amount for non-economic damages, specifically disfigurement, humiliation and embarrassment associated with the permanent scars left by the dog attack." She goes on to claim that "the amount remaining, after the [c]ourt's actions reduced the damages, was inadequate to compensate her since the jury felt they were giving her enough money to remove the scars." In other words, according to Ms. Sowell, the court's failure to award her hospital costs may have prevented her from having the surgery to reduce the scarring. She argues that the denial of future hospital costs deprived her of the means to pay for the required surgery. Without these means, according to Ms. Sowell, the duration of her disfigurement, humiliation and embarrassment would be longer. Therefore, the argument goes, the jury might well have found her non-economic damages to be substantially greater than the $5,000 which the jurors awarded to her in that category, for the jurors were laboring under the erroneous belief that she would be able to use the award to pay for the needed surgery.[14]

---

12. As we have noted, the judge's decision whether to strike portions of Dr. LeFlore's testimony was a highly discretionary one. If the judge had exercised his discretion in favor of the plaintiff's position, the defendants' prospects in cross-examination would have been impaired by lack of discovery.

13. We note, however, that the judge struck only the previously undisclosed portions of Dr. LeFlore's evidence, and not his entire testimony. *See Corley, supra,* 402 A.2d at 1262 (sustaining a comparable sanction as appropriately moderate).

14. Ms. Sowell also claims that the judge's decision to subtract $19,000 from the jury's award was based on guesswork and intruded upon the jury's domain. Substantially for the reasons stated by the trial judge in his written

Ms. Sowell's claim is not an implausible one. In substance, she argues on appeal that the trial judge should have instructed the jurors regarding a fact that she believed to be relevant to their deliberations. It is not inconceivable that a jury might make a larger award for scarring and its attendant embarrassment and humiliation to a plaintiff who could not afford surgical treatment than to a plaintiff who could. Here, the jurors were not informed that Ms. Sowell would not receive the amount they had awarded her for future hospital costs. If they had known this fact, they might have questioned whether she could have afforded the surgery. Moreover, the judge's response to the jury's inquiry regarding hospital costs tended to reinforce the jurors' belief that these costs remained relevant, that the jurors' views on the subject mattered, and that Ms. Sowell would probably receive the amount that the jurors were prepared to award.[15]

But even assuming that this issue was adequately preserved,[16] Ms. Sowell cannot prevail. First, the trial judge's apparent reluctance to tell the jurors that he had stricken the testimony regarding future hospital costs was surely understandable.

The judge could reasonably have believed that an instruction to the jurors to disregard what they had just heard from Dr. LeFlore would have been just about as effective as a directive *not* to think about a pink elephant. We have recognized that

> one cannot unring a bell; after the thrust of the saber it is difficult to say forget the wound; and finally, if you throw a skunk into the jury box, you can't instruct the jury not to smell it.

*Thompson v. United States,* 546 A.2d 414, 425 (D.C.1988) (quoting *Dunn v. United States,* 307 F.2d 883, 886 (5th Cir.1962)). Inadmissible evidence may make "such a strong impression on the minds of the jury that its subsequent withdrawal or the instruction to disregard it probably failed to eradicate the injurious effect of it from the minds of the jury...." *Penwell v. District of Columbia,* 31 A.2d 891, 893 (D.C. 1943) (quoting *Maytag v. Cummins,* 260 F. 74, 82 (8th Cir.1919)). The trial judge's decision not to disclose to the jury his order that certain evidence be stricken was consistent with these realities. Moreover, from the trial judge's perspective, it was the plaintiff's counsel's action in causing

---

order, see p. 443, *supra,* we are unpersuaded by this contention. The only evidence regarding medical expenses that remained in the record was Dr. LeFlore's testimony that he would charge between $4,000 and $6,000. The award for medical expenses, after the judge had reduced it, was $5,000.

15. Ms. Sowell argues that the trial judge's response to the jury's note misled the jurors by implying that hospital costs were still in the case and by ordering the jurors, in effect, to spend more time discussing a subject that had become entirely inconsequential. We are constrained to note that in this regard, Ms. Sowell has a point. In fairness to the judge, however, we recognize that once he had decided, perhaps on a "skunk in the jury box" theory, see text, *infra,* at p. 448, that his order striking evidence of hospital costs should not be disclosed, no reasonable alternative response to the jury's inquiry is readily apparent.

16. "No party may assign as error the giving or the failure to give an instruction *unless*

that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Super. Ct. Civ. R. 51 (emphasis added). The record on appeal does not contain the judge's charge to the jury or the discussions between court and counsel preceding the charge. At the time of the discussion of an appropriate response to the jury's note, however, Ms. Sowell's attorney requested that the jury be informed of Dr. LeFlore's estimate of his own anticipated charges—*i.e.,* between $4,000 and $5,000. See p. 443, *supra.* This could arguably be construed as an objection to nondisclosure of the judge's striking of the hospital costs, although the record support for the notion that this was such an objection, or that one was timely made, is rather skimpy. *See Miller v. Avirom,* 127 U.S.App.D.C. 367, 369–70, 384 F.2d 319, 321–22 (1967) ("Questions not properly raised and preserved during the proceedings under examination, and points not asserted with sufficient precision to indicate distinctly the party's thesis, will normally be spurned on appeal.") (footnotes omitted).

the initial disclosure of Dr. LeFlore's estimates to be made in the presence of the jury that created the problem in the first place.

Second, the jury returned a verdict in which it awarded $24,000 to Ms. Sowell for future medical expenses and $5,000 as "non-economic damages." The trial judge struck $19,000 of the $24,000 because—and solely because—the plaintiff had failed to make the disclosure required by the motions judge's pretrial order. Having brought about, through noncompliance with that order, the reduction of the award for medical expenses, the plaintiff was not entitled to profit from that noncompliance by receiving a corresponding increase in the award for scarring, embarrassment and humiliation. The fact that the $24,000 award for future medical expenses was being reduced on account of the plaintiff's failure to provide full discovery directly affected only that award. It had no automatic connection to the separate award of $5,000 in non-economic damages. Moreover, the jurors had no information regarding Ms. Sowell's resources—whether, for example, she had health insurance which would cover the proposed surgery. So far as the jury knew, she could have had the operations anyway. The notion that the award for scarring, embarrassment and humiliation would have been greater if the judge had revealed his ruling on hospital costs, is quite speculative.

The trial judge's decision not to disclose his decision to strike to the jury was consistent with a common-sense assessment of the practical dangers that would be created by disclosure. These dangers were hardly imaginary. The situation, in the judge's reasonable view, was created by the plaintiff. We cannot say, under these circumstances, that the judge committed reversible error.

 *Affirmed.*[17]

---

17. Ms. Sowell also contends that, with respect to future hospital costs, the trial judge erred by granting judgment as a matter of law (JMOL) in the defendants' favor when the defendants had filed no motion pursuant to Super. Ct. Civ. R. 50(b) seeking this relief. *See Gleason v. L. Frank Co.*, 328 A.2d 96, 98 (D.C.1974). But if we look to the substance rather than to the form of what took place, *cf. EDM & Assocs., Inc. v. GEM Cellular*, 597 A.2d 384, 388 (D.C.1991), it is apparent that the judge's reduction of the award simply carried out his prior decision, made in midtrial, to disallow the estimated hospital costs to which Dr. LeFlore had testified. In other words, the judge performed an act which it was incumbent upon him to perform in light of his earlier ruling, and any JMOL motion would have served no purpose. *See In re Melton*, 597 A.2d 892, 908 (D.C.1991) (en banc) (the law will not require a futile act).