In re ESTATE OF Esther BRABSON.

Joann B. Conrad, Appellant,

v.

Julia B. Randall, et al., Appellees.

No. 99–PR–107.

District of Columbia Court of Appeals.

Argued June 13, 2000.
Decided Aug. 17, 2000.

Marsha E. Swiss, Washington, DC, for appellant.

Nicholas D. Dale, Bethesda, MD, with whom Bonnie J. Lawless, was on the brief, for appellees.

Before SCHWELB, REID, and GLICKMAN, Associate Judges.

SCHWELB, Associate Judge:

This appeal concerns adult siblings who are embroiled in a prolonged legal dispute with one another over their deceased mother's estate. Specifically, we must determine the estate tax consequences of the settlement of related Maryland litigation. In the Maryland case, the appellant, Joann B. Conrad, agreed to pay her siblings, appellees Julia B. Randall and Dr. Winslow Brabson, a total of $350,000 to resolve the appellees' allegation that Mrs. Conrad had obtained control, by undue influence and by abuse of a relationship of trust and confidence, of certain property belonging to the parties' mother. Following extensive proceedings before three different judges in the Probate Division of our Superior Court, that court ruled that the appellees had no estate tax obligations with respect to the funds paid to them in conformity with the settlement. Mrs. Conrad appeals; we reverse.

## I.

The decedent, Esther Brabson, a resident of the District of Columbia, died on January 5, 1992. She was survived by the three children who are parties to this case, namely, the appellant, Mrs. Conrad, and the appellees, Mrs. Randall and Dr. Brabson. Mrs. Brabson left a gross estate valued at more than $1,500,000.

In the years preceding her death, Mrs. Brabson had acquired two annuity policies from Kemper Investment, Inc. (Kemper). The first Kemper policy, purchased in 1981 for $181,973, named Mrs. Conrad as the

successor owner and annuitant, and Allison Conrad, Mrs. Conrad's daughter and the decedent's granddaughter, as contingent beneficiary.[1] In 1982, Mrs. Brabson purchased a second Kemper policy for the sum of $75,375, naming all three of her children as successor owners. Later that year, the decedent changed that designation, made Mrs. Conrad her sole successor, terminated the interests of Mrs. Randall and Dr. Brabson, and established a trust in favor of Allison.

Mrs. Brabson also owned a home in Chevy Chase, Maryland, jointly with Mrs. Conrad. She, Mrs. Conrad, and Allison lived in the home from 1979 to 1987. In 1983, Mrs. Brabson transferred her entire interest in the Chevy Chase home to Mrs. Conrad. Mrs. Brabson was suffering from Alzheimer's disease and in 1987, unable to care for herself, she was placed under conservatorship. Mrs. Brabson was moved to the Army Distaff Home in the District, where she died less than five years later.

Following their mother's death, Mrs. Randall and Dr. Brabson brought suit against Mrs. Conrad in the Circuit Court of Montgomery County, Maryland. The appellees challenged the *inter vivos* disposition of their late mother's assets, claiming that Mrs. Conrad had exercised undue influence upon Mrs. Brabson and had thereby caused Mrs. Brabson to transfer to Mrs. Conrad the Kemper annuity policies, the Chevy Chase home, and approximately $100,000 in cash. The appellees asked the Circuit Court to set aside the deed to the Chevy Chase home and to order that the home, as well as the proceeds of the policies, be made a part of Mrs. Brabson's estate and disposed of accordingly. Mrs. Brabson's will, executed in 1981, contained certain bequests which were followed by a residuary clause leaving the balance of her property "unto my three children ... in fee simple and in

absolute estate, share and share alike." Thus, if the assets previously conveyed to Mrs. Conrad were to become a part of the estate, each appellee would be entitled to receive one third of the value of each such asset.

In their suit, the appellees also demanded that Kemper refrain from making payments to Mrs. Conrad under the annuity policies. In response, Kemper requested instructions from the court as to the proper disposition of the policies. The two policies were subsequently liquidated by order of the court, and the proceeds were deposited in the registry of the court.

Three years after their mother's death, the principals resolved the Maryland litigation with a negotiated compromise. The settlement was somewhat unorthodox in that the parties' agreement was not reduced to writing. Rather, the judge (Weinstein, J.) made the following announcement in open court:

> THE COURT: The defendant [Joann B. Conrad] will pay to the plaintiffs Julia Randall and Winslow Brabson the total sum of $350,000. Payment of that sum of money will be accomplished once the parties receive tax advice.

On June 12, 1995, the court ordered the release to the appellees, from the registry of the court, $350,000, less fees and costs incurred by Kemper.

Meanwhile, the proceedings relating to the settlement of Mrs. Brabson's estate were being conducted in the Probate Division of our Superior Court. In a final accounting filed on July 28, 1995, the estate's co-personal representatives, namely Mrs. Conrad and Crestar Bank, allocated the estate taxes among the decedent's three children in proportion to the economic benefits received by each under the settlement. Specifically, Mrs. Randall and Dr. Brabson were to contribute $70,170.52 for the payment of estate taxes on the

---

1. To avoid confusion, we refer to appellant Joann B. Conrad as Mrs. Conrad and to her daughter, Allison Conrad, as Allison.

$350,000 received by them in the settlement. The appellees objected to this allocation, contending that under the settlement agreement, Mrs. Conrad alone was responsible for paying the estate taxes. On December 22, 1995, in an oral decision, Judge Wendell P. Gardner ruled in favor of the appellees, holding as a matter of law that the settlement was "three hundred and fifty thousand dollars, period. And if that's the case, then they're not charged with apportionment of some of the taxes to the three hundred and fifty thousand dollars."

On September 22, 1996, Mrs. Conrad, who had retained her present attorney in place of prior counsel, filed a motion for reconsideration. On April 22, 1997, in a written order, Judge Kaye K. Christian denied Ms. Conrad's motion, both on the merits and because the judge viewed herself as bound by Judge Gardner's order under the doctrine of the law of the case. Mrs. Conrad noted an appeal to this court, but, on August 31, 1998, that appeal was dismissed for lack of an appealable final order.

Following the dismissal of the appeal, the probate proceedings in the Superior Court were completed. In the final accounting for the estate, in conformity with Judge Gardner's ruling, the estate taxes were allocated entirely to Mrs. Conrad, who filed exceptions in which she reiterated her prior position that the estate taxes should be allocated in accordance with the benefits received. On January 14, 1999, Judge Peter H. Wolf overruled Mrs. Conrad's exceptions and approved the final accounting. This appeal followed.

## II.

■ The District's tax apportionment statute states that except as otherwise provided in the decedent's will, federal or District of Columbia estate taxes payable by law with respect to any property included in a decedent's gross estate "shall be prorated among the persons interested in the estate to whom the property is or may be transferred or to whom any benefit accrues." D.C.Code § 47–3714. The statute goes on to provide that

> [a]pportionment shall be made in the proportion that the value of the property, interest, or benefit of each person bears to the total value of the property, interests, and benefits received by all persons interested in the estate....

"[T]he apportionment statute requires estate taxes to be shared by persons having an interest in the decedent's estate; apportionment is in accordance with the value of each person's particular interest." *Rockler v. Sevareid,* 691 A.2d 97, 99 (D.C. 1997). We must decide whether the apportionment statute applies where, as here, the parties have settled all claims in a prior suit where the relief sought in that suit was that certain assets be made part of the decedent's estate, and where the parties have failed to include in their settlement agreement any express provision specifying who shall be responsible for the payment of estate taxes. This question is one of law, and we review the trial court's decision *de novo.*[2]

In *Lyeth v. Hoey,* 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119 (1938), the Supreme Court held that, for income tax purposes, property received by an heir under an agreement compromising and settling claims contesting the decedent's will was acquired by inheritance. *Id.* at 194–96, 59 S.Ct. 155. The Court noted that in many jurisdictions "the amount received by an heir under an agreement compromising a contest of his ancestor's will is considered to be received by virtue of his heirship and is subject to an inheritance tax unless the statute exempts him." *Id.* at 192, 59 S.Ct. 155 (footnote and citations omitted). The

---

**2.** The trial court did not conduct an evidentiary hearing in this case. Although the parties submitted affidavits of counsel describing the negotiations from the perspective of the affi-

ant, we conclude, for reasons set forth below, that there is no issue of material fact requiring the taking of testimony.

Court reasoned that "the distinction sought to be made between acquisition through ... a judgment [after a trial] and acquisition by a compromise agreement in lieu of such a judgment is too formal to be sound...." *Id.* at 196, 59 S.Ct. 155. The Court concluded that, for purposes of federal income taxation, the proceeds of a settlement of a will contest are to be treated in the same manner as if they had been distributed in accordance with the terms of the will.

■ Although *Lyeth* was decided under federal law while the present case turns on local law, the logical application of *Lyeth* to the present record is apparent. If the Maryland action had not been settled, and if the appellees had prevailed at trial, then Mrs. Brabson's residuary estate would have been enhanced by the total amount of the recovery made from the challenged *inter vivos* transfers of the real estate and the now-liquidated annuities. If this had occurred, then the estate tax burden would have followed the assets included in the gross estate and distributed to each sibling. Section 47–3714, as we have seen, requires that the amount of the tax so paid "shall be prorated among the persons interested in the estate to whom the property is or may be transferred or to whom any benefit accrues." Conversely, if Mrs. Conrad had prevailed at trial, the entire tax burden would have fallen upon her, for she would have been entitled to the entire amount of the disputed assets. *Lyeth* holds that sums received in settlement should be treated in the same manner as amounts obtained as a result of contested litigation. By seeking to impose upon Mrs. Conrad the tax burden for assets transferred to her sister and brother, the appellees are effectively asking the court to penalize her for settling the litigation rather than going to trial.[3]

The appellees attempt to distinguish *Lyeth* because that case involved a dispute between the Internal Revenue Service and the beneficiary of a negotiated settlement, while the present case involves competing claims by private parties. But the characterization of the proceeds is the focus of *Lyeth*, and that characterization is dispositive here. Indeed, the protagonists asserting claims here differ from the *dramatis personae* in *Lyeth* only because, in this case, the personal representatives have paid the taxes in question, and could reasonably be viewed as quasi-subrogees of the claims which might otherwise have been asserted by the Internal Revenue Service.

Mrs. Randall and Dr. Brabson contend that "[t]he issue before the court is whether the parties entered into a full and final settlement of all claims between them, rendering it unnecessary for the courts of the District of Columbia to apply this [apportionment] statute to the case." They claim that such a dispositive settlement was concluded, and that Mrs. Conrad cannot now escape its terms on the basis of what the appellees describe as a unilateral mistake of law regarding estate tax consequences. It may well be that under the appellees' understanding of the agreement, they had no estate tax liability. It may even be that Mrs. Conrad's former counsel did not detect the issue, and he evidently did not insist during negotiations that estate tax liability be allocated proportionately. But the settlement agreement, as announced by Judge Weinstein, is silent as to estate tax liability; it states neither that Mrs.

---

**3.** The appellees assert that *Lyeth* deals with federal income taxation and is therefore inapposite. In *Helvering v. Safe Deposit & Trust Co.*, 316 U.S. 56, 62 S.Ct. 925, 86 L.Ed. 1266 (1942), however, the Court rejected the notion that the principle announced in *Lyeth* is not applicable where "the question is one of *estate* tax liability." *Id.* at 65, 62 S.Ct. 925 (emphasis added). The Court also stated that if the case "had been litigated to final judgment by a competent tribunal and the brother and sister[ ] had succeeded in establishing the validity of [their allegations], the inclusion in the decedent's gross [taxable] estate of what they would have received ... could not seriously be questioned." *Id.* at 64–65, 62 S.Ct. 925.

Conrad is solely responsible for the estate taxes nor that her siblings must pay a proportionate share.[4] As Mrs. Conrad correctly points out in her brief, "[t]he settlement thus commemorated was for $350,000, not for $350,000 plus $70,170 in estate taxes." The release executed by Mrs. Conrad does not suggest that tax liability is being shifted to her. We therefore conclude as a matter of law that neither the words of the settlement agreement, as announced by Judge Weinstein, nor the course of dealings, as described by counsel for the appellees, resulted in an agreement of the parties on the estate tax issue.

Finally, the appellees appear to claim that the $350,000 that they received in the settlement represented a debt owed to them by Mrs. Conrad individually, that the money did not come from Mrs. Brabson's estate, and that the teaching of *Lyeth* therefore has no application. We agree with Mrs. Conrad, however, that

[Mrs.] Conrad owed Dr. Brabson and [Mrs.] Randall nothing individually. In her individual capacity she had caused them no harm for which she could be answerable in tort. Their claim upon her was solely connected with their contention that [Mrs.] Conrad had wrongfully enriched herself to the detriment of their mother's estate in which they had an expectation of benefit. Dr. Brabson and [Mrs.] Randall cannot, on the one hand, define the nature of their controversy for purposes of litigation, then repudiate the nature of the moneys they achieved through its settlement. To transmute their recovery of putative estate assets into a recovery of a "debt" evidenced by an "executory accord" with their sister is alchemy in defiance of [*Lyeth* and its progeny]. . . .

In other words, the appellees brought their suit on the theory that certain assets controlled by their sister were wrongfully obtained, and that these assets should be treated as a part of their mother's estate. Having received $350,000 in settlement of a suit instituted under that theory, they are precluded from claiming that the money that was paid to them was not a part of the estate.

4. Relying on an affidavit by their counsel, the appellees claim that they released Mrs. Conrad from any liability to them in exchange for $350,000, and that under the settlement agreement, no other obligation on their part was contemplated by either party. They assert that their attorney, who had an advanced degree in taxation, had made them aware of the tax considerations arising under the proposed agreement, that they had rejected an offer of $325,000, and that it was only on the basis of their awareness of tax consequences that they had settled the Maryland litigation. The appellees surmise, not unreasonably, that unlike their own counsel, the attorney who negotiated the agreement on Mrs. Conrad's behalf may not have been aware of the estate tax issues arising under the settlement, but they argue that "it was not the responsibility of appellees' counsel . . . to make [him] aware."

Mrs. Conrad's former attorney represents in his affidavit, on the other hand, that estate tax issues were not discussed during the negotiations. The appellees do not assert the contrary. If the settlement had contained a provision requiring Mrs. Conrad to pay estate tax on moneys received by her siblings, then, according to her former attorney, she would not have agreed to it. Counsel for the appellees could, of course, have requested that the settlement explicitly provide for payment of estate taxes by Mrs. Conrad, but the inclusion of such an express provision would obviously have increased the risk that Mrs. Conrad would reject the deal. In any event, regardless of what the tactical motivation of appellees' counsel may have been, the settlement is silent as to who was to pay estate taxes on the $350,000 paid to Dr. Brabson and Ms. Randall. This sum was paid to resolve a claim by appellees that Mrs. Conrad had possession of assets that rightfully belonged to the estate. With the agreement, as announced by Judge Weinstein, silent on the subject of who pays estate taxes, we conclude, for reasons stated in the text, that the tax apportionment statute, as informed by *Lyeth*, controls.

### III.

For the foregoing reasons, the decision of the trial court is reversed, and the case is remanded for further proceedings consistent with this opinion.

 *So ordered.*[5]

---

5. Mrs. Conrad did not meaningfully present to Judge Gardner the legal issues, based on the apportionment statute and *Lyeth,* on which she has founded her appeal. In fact, these issues were developed for the first time by Mrs. Conrad's present attorney in the motion for reconsideration which that attorney submitted to Judge Christian. The appellees argue that these issues have not been properly preserved for appeal. We disagree.

Although the belated introduction of major contentions is not to be encouraged, Mrs. Conrad's position—one that we have found to be persuasive on the merits—was fully presented to the Superior Court well before that court's final disposition of the case. Under these circumstances, we do not think it appropriate to treat a meritorious argument as having been waived, particularly since there has been no discernible prejudice to the appellees' opportunity to litigate the issues. Mrs. Conrad's delay may, however, have required the appellees' attorneys to expend time and effort which would have been unnecessary if the issues had been timely raised. Accordingly, on remand, the trial court may, in its discretion, award the appellees, as costs, any reasonable counsel fees—but only those reasonable counsel fees—that are fairly attributable to the delay by Mrs. Conrad in presenting her contentions to the trial court.

The appellees also argue, and Judge Christian held, that under the doctrine of the law of the case, she was required to follow Judge Gardner's decision. But even assuming, without deciding, that this contention is correct, *cf., District of Columbia v. Faison,* 278 A.2d 688, 690 (D.C.1971) ("interlocutory rulings do not settle the law of a case"), Mrs. Conrad is free, on appeal from Judge Wolf's final judgment, to challenge any interlocutory ruling, not previously appealable, that "led to entry of the final judgment and thus may have infected with error that judgment." *Desmond v. Robertson,* 211 A.2d 775, 776 & n. 2 (D.C. 1965); *see also Palmer v. Fisher,* 228 F.2d 603, 607 (7th Cir.1955), *cert. denied,* 351 U.S. 965, 76 S.Ct. 1030, 100 L.Ed. 1485 (1956) ("[o]f course, prejudicial errors in interlocutory orders may ordinarily be reached on an appeal from the final judgment"); 5 C.J.S. *Appeal and Error* § 735, at 157 (1993) ("an interlocutory decision, order, or ruling which is not itself independently appealable may be reviewed on appeal from a final judgment or decree") (footnote omitted). Moreover, the "law of the case" rule applies to judges of courts of coordinate jurisdiction, *see Sowell v. Walker,* 755 A.2d 438, 443(D.C. 2000) (citation omitted), and cannot require an appellate court to follow a ruling of the trial court.